[No. 64291-0-I.   Division One.   March 21, 2011.]

JAMES A. BIRD, *Respondent*, v. BEST PLUMBING GROUP, LLC, *Respondent*, FARMERS INSURANCE EXCHANGE, *Appellant*.

*Jerret E. Sale, Deborah L. Carstens, Matthew J. Sekits,* and *Janis C. Puracal* (of *Bullivant Houser Bailey PC*) (*Douglas G. Houser,* of counsel); and *Philip A. Talmadge* and *Sidney C. Tribe* (of *Talmadge/Fitzpatrick*), for appellant.

*William C. Smart* and *Isaac Ruiz* (of *Keller Rohrback LLP*); *Jeffrey I. Tilden* (of *Gordon Tilden Thomas & Cordell LLP*); and *Rick J. Wathen* (of *Cole Lether Wathen & Leid PC*), for respondent James A. Bird.

*Andrew J. Kinstler* (of *Helsell Fetterman LLP*) and *A. Richard Dykstra* (of *Friedman Rubin*), for respondent Best Plumbing Group LLC.

¶1 LAU, J. — When a defendant whose liability insurer has acted in bad faith proceeds to make his own settlement with an injured plaintiff, the amount of that settlement may become the presumptive measure of damage in the bad faith lawsuit, but only if a trial court determines that the settlement is reasonable and not the product of fraud or collusion. *Besel v. Viking Ins. Co. of Wis.*, 146 Wn.2d 730, 733, 49 P.3d 887 (2002). Here, James Bird entered into a settlement that included a stipulated judgment and covenant not to execute with Best Plumbing, who assigned its rights against its insurer to Bird. The trial court determined that the settlement was reasonable. Farmers Insurance Exchange seeks reversal of the trial court's reasonableness determination, arguing that the trial court erred by denying its jury trial demand and finding the settlement was reasonable. We affirm the finding of reasonableness because (1) a hearing to determine the reasonableness of a settlement under RCW 4.22.060 is an equitable proceeding with no right to trial by jury and (2) the trial court properly exercised its discretion in determining the reasonableness of the settlement.

## FACTS

¶2 James Bird lives on hillside waterfront property on Perkins Lane in Seattle. In April 2005, Bird's next door neighbor contacted Best Plumbing to repair a leaking sewer line. A Best Plumbing employee, without Bird's consent, went onto Bird's property and cut Bird's pressurized sewage line in three places. When Bird returned home from work, his system "cycled on" and engulfed him in an explosion of sewage. Bird fell, cracked his elbow, and vomited.

¶3 Bird later learned from his neighbor that Best Plumbing's employee had cut the line. Bird demanded the line be fixed. Best Plumbing claimed it repaired the line. But over the next eight months, sewage continued to escape the line. According to Bird, this sewage flow caused hillside instability and extensive damage to his residence. Bird removed contaminated soil from his lot and attributes his subsequent heart attack to this physical labor. To determine the extent of damage and repair, Bird hired a geotechnical engineering firm, contractors, and others.

¶4 The City of Seattle issued a stop work order in January 2006 due to concerns about hillside instability. Bird's geotechnical engineer, William Chang, made several proposals to the City until they finally approved a soldier-pile retaining wall, which was estimated to cost $851,176.78. Bird discovered that the pipe had discharged thousands of gallons of sewage onto his lot. Chang concluded that the sewage leak from the cut line, rather than Bird's soil excavations, caused the instability problem.

¶5 In May 2006, Bird notified Best Plumbing that the actions of its employee had caused significant damage to his residence and hillside lot. Best Plumbing's liability insurer, Farmers, appointed defense counsel, without a reservation of rights. Meanwhile, Allstate Insurance paid Bird $262,000 under his homeowner's insurance policy for damage to his home.[1]

¶6 Bird sued Best Plumbing on May 7, 2007, alleging trespass and negligence. Allstate separately asserted subrogation claims against Best Plumbing for the $262,000 it paid. The court later consolidated the two cases. In July 2008, after Best Plumbing admitted its employee went onto Bird's property without permission, the court granted Bird's partial summary judgment motion on liability and proximate cause on his common law trespass claim. The nature and extent of Bird's damages remained for trial.

---

[1] Bird, as part of his business, sold Allstate insurance.

¶7 In November 2008, the parties' mediation efforts failed. Best Plumbing made no settlement offer. Later, Bird made a $1.2 million settlement demand on Best Plumbing. Farmers countered with a $350,000 settlement offer. Bird's counsel then wrote to Best Plumbing, asserting that its potential exposure exceeded the $2 million policy limits based on the intentional trespass statute's treble damages provision. Bird made a $2 million policy limits demand, which Farmers rejected. Concerned about the company and his potential exposure in excess of policy limits, Best Plumbing president William Lilleness retained personal counsel Richard Dykstra, with whom he had previously worked. Without Farmers' participation, Bird and Best Plumbing reached a $3.75 million settlement agreement that included an assignment of Best Plumbing's claims against Farmers, a stipulated judgment, and a covenant not to execute against Best Plumbing.

¶8 Bird moved for a determination that the settlement was reasonable. The trial court granted Farmers' motions to intervene, to continue the reasonableness hearing, and to conduct discovery. It denied Farmers' jury trial demand. The court conducted a reasonableness hearing over four days in July and September 2009. In its October 7, 2009 memorandum ruling, the court found that the $3.75 million settlement was reasonable.

¶9 Farmers appeals the denial of its jury trial demand and the trial court's determination that the settlement was reasonable.

*ANALYSIS*

I. *Jury Trial Right*

¶10 Farmers contends that deciding the damages issue against the insurer in the liability action without a jury is unconstitutional and contrary to law and policy. Farmers further argues that because the reasonableness determination in the liability action sets the presumptive amount of damages in the bad faith action, the insurer is deprived of

its article I, section 21 state constitutional right to have damages decided by a jury. Farmers relies on *Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 771 P.2d 711, 780 P.2d 260 (1989), which held there was a constitutional right for the jury to determine the amount of noneconomic damages. *Sofie* struck down the cap on noneconomic damages under the tort reform act. *Sofie*, 112 Wn.2d at 669. Bird responds that the RCW 4.22.060 reasonableness hearing is equitable in nature, not legal, and therefore, no right to a jury trial attaches. Bird argues that this issue is controlled by *Schmidt v. Cornerstone Investments, Inc.*, 115 Wn.2d 148, 795 P.2d 1143 (1990).

¶11 "In determining whether a case is primarily equitable in nature or is an action at law, the trial court is accorded wide discretion, the exercise of which will not be disturbed except for clear abuse." *Brown v. Safeway Stores, Inc.*, 94 Wn.2d 359, 368, 617 P.2d 704 (1980).

> The Washington State Constitution, article 1, section 21 provides that the right to a jury trial shall remain inviolate. We have consistently interpreted this constitutional provision as guaranteeing those rights to trial by jury which existed at the time of the adoption of the constitution. Accordingly, there is a right to a jury trial where the civil action is purely legal in nature. Conversely, where the action is purely equitable in nature, there is no right to a trial by jury.

*Brown*, 94 Wn.2d at 365 (citations omitted).

¶12 In determining whether a party has a constitutional right to jury trial, we look to both the scope of the right and whether the cause of action is one to which the right to a jury trial applied at the time the state constitution was adopted in 1889. *Wings of the World, Inc. v. Small Claims Court*, 97 Wn. App. 803, 806-07, 987 P.2d 642 (1999). For causes of action that did not exist in 1889, we look for then-existing proceedings that are analogous to the present action. *Tae Yon Kim v. Dean*, 133 Wn. App. 338, 135 P.3d 978 (2006). There is no "right to a jury trial . . . in statutorily created actions without common law analogues." *State v.*

*State Credit Ass'n*, 33 Wn. App. 617, 621, 657 P.2d 327 (1983).

¶13 The challenged statute here expressly states that *the court* shall determine reasonableness: "A hearing shall be held on the issue of the reasonableness of the amount to be paid with all parties afforded an opportunity to present evidence. A *determination by the court* that the amount to be paid is reasonable must be secured." RCW 4.22.060 (emphasis added). "A statute is presumed to be constitutional and the challenger bears the burden of establishing the unconstitutionality of the legislation beyond a reasonable doubt." *Brower v. State*, 137 Wn.2d 44, 52, 969 P.2d 42 (1998).

¶14 While Farmers cites *Sofie* correctly, its holding is not applicable here. Farmers does not contend that juries made determinations regarding a settlement's reasonableness at the time our constitution was adopted. Rather, Farmers asserts that because this reasonableness procedure, created by statute in 1981 and since interpreted by the courts, creates a damages presumption in a later action against an insurer, it unconstitutionally interferes with the jury's damages determination. And as the *Sofie* court made clear, we must resolve all doubt in the statute's favor. *Sofie*, 112 Wn.2d at 644.

¶15 Not long after our Supreme Court decided *Sofie*, it addressed a jury trial right challenge to RCW 4.22.060 in *Schmidt*, 115 Wn.2d 148.[2] There, real estate investors sued an appraiser and other defendants when their investment failed. The investors settled with the appraiser for $50,000. But following a hearing to determine the reasonableness of the settlement under RCW 4.22.060, the trial court found $50,000 unreasonable and determined $150,000 a more appropriate settlement. Investors settled with the appraiser for $50,000 despite the court's ruling. The court advised the parties it would consider a motion for reconsideration of its reasonableness ruling after the trial against

---

[2] *Schmidt* makes no mention of the *Sofie* decision.

the remaining defendants. After trial, the court denied reconsideration of its reasonableness ruling. Investors appealed. Defendants filed cross appeals. At the Supreme Court's request, the Washington State Trial Lawyers Association (WSTLA) and the Washington Defense Trial Lawyers (WDTL) submitted amici curiae briefs.

¶16 Relevant to our review here, investors challenged "whether RCW 4.22.060 is unconstitutional because it allows the trial court to reduce the total sum of an injured party's damage award by an amount determined by the trial court rather than by a jury." *Schmidt*, 115 Wn.2d at 159.

¶17 *Schmidt* rejected this contention on dual grounds, holding (1) the constitutional issue was not properly raised and (2) a reasonableness hearing is an equitable proceeding with no right to trial by jury. First, the court found plaintiffs had failed to properly raise this issue based on briefing inadequacies. Next, the court found *In re MGM Grand Hotel Fire Litigation*, 570 F. Supp. 913 (D. Nev. 1983) and *Barreto v. City of Waukegan*, 133 Ill. App. 3d 119, 129, 478 N.E.2d 581, 88 Ill. Dec. 266 (1985), cases cited by WSTLA and WDTL in support of rejecting plaintiff's constitutional challenge, highly persuasive. Our Supreme Court reasoned, "As both of these cases indicate, the right to jury trial does not extend to procedures in equity, such as whether the amount of a proposed settlement is reasonable. Such questions are properly within the province of the trial court to decide." *Schmidt*, 115 Wn.2d at 161.

¶18 Farmers, however, asserts *Schmidt*'s holding on the jury trial right constitutes dictum and is distinguishable. It also argues *Schmidt* "held there is no right to a jury trial in a reasonableness hearing held **for the purpose of allocating liability among tort feasors.**" Appellant's Br. at 19. But Farmers misstates the holding. Notably, it omits any citation to the *Schmidt* case to support this alleged holding. As to Farmers' assertion that *Schmidt*'s holding is mere dictum, we disagree. As our Supreme Court noted long ago, "It may be that the case could have been rested on the

first ground suggested in the opinion . . . but both questions were clearly in the case, and simply because the court decided both, does not necessarily mean that the one or the other is dictum." *Savage v. Ash*, 86 Wash. 43, 46, 149 P. 325 (1915). *Schmidt* made two holdings when it rejected the investors' jury trial right challenge.[3]

¶19 Farmers next attempts to distinguish *Schmidt*, claiming it was decided under pre-1986 law, while addressing RCW 4.22.060's application to the joint tortfeasor situation, rather than the nonparty insurer situation involved here. Farmers acknowledges that applying RCW 4.22.060 to the joint tortfeasor context is equitable but argues that its application here in the nonparty insurer situation is legal. But as the *Schmidt* court's holding quoted above makes clear, the determination of a settlement's reasonableness is an equitable proceeding with no jury trial right. And nothing in the opinion limits this holding to a case involving a joint tortfeasor. As we reasoned in *Chaussee v. Maryland Casualty Co.*, 60 Wn. App. 504, 512, 803 P.2d 1339, 812 P.2d 487 (1991), "[there is] little difference between a determination of reasonableness in the context of the contribution statute and [a covenant judgment]. In both settings similar concerns exist regarding the impact of a settlement on other parties and the risk of fraud or collusion."

¶20 In *MGM*, the court was asked to determine whether certain settlements in a wrongful death action were entered in "good faith" pursuant to Nevada statute. The nonsettling litigants argued that the court could not determine the good faith issue because good faith was a question for a jury to decide. *MGM*, 570 F. Supp. at 926. In ruling against trial by jury, the court reasoned:

> There is no right to a jury trial under [Nevada Revised Statutes (N.R.S.) §] 17.245 because the issue of "good faith" *and the amount of a credit to which a non-settling defendant would be entitled is one of "equity"* for which there is no right to trial

---

[3] Bird correctly notes that *Schmidt* decided this issue "in response to the appellant's urged disposition of the case." Resp't's Br. at 34.

by jury. The policy of encouraging settlements under N.R.S. 17.245 would be impaired if multiple trials by jury would have to be held in order to determine whether a settlement was in "good faith." A non-settling party is fully protected by its ability to present counter-affidavits or evidence at a hearing on the issue of "good faith."

*MGM*, 570 F. Supp. at 927 (emphasis added).

¶21 In *Barreto*, the court held, "The right to trial by jury does not extend to special or statutory proceedings unknown at common law, and as this issue of good faith settlement arises under the Illinois Contribution Act where no provision granting the right to a jury trial is provided, no right to a jury trial attaches." *Barreto*, 133 Ill. App. 3d at 129 (citation omitted).

¶22 In addition, the type of determination to be made—the reasonableness of an award decided between two parties to be imposed on another—rests on traditional concerns of fairness that lie at the heart of a court's equitable powers. Indeed, other persuasive authority either directly holds or strongly supports that reasonableness determinations are the province of trial court judges. *Alton M. Johnson Co. v. M.A.I. Co.*, 463 N.W.2d 277, 279 (Minn. 1990) (reasonableness determination "is more accurately portrayed as an action to enforce an agreement against an indemnifier who was not a party to the agreement. The decisionmaker is being asked to apply its sense of fairness to evaluate a compromise of conflicting interests, a characteristic role for equity. In short, this action is more like an action in equity, which traditionally is tried to the court"); *Enserch Corp. v. Shand Morahan & Co.*, 952 F.2d 1485, 1495 (5th Cir. 1992) (trial court did not err in preventing insurers' challenge to its denial of discovery into the reasonableness of settlement or refusing to submit this issue to the jury); *Norris v. Nationwide Mut. Ins. Co.*, 55 S.W.3d 366, 370 (Mo. Ct. App. 2001) ("whether a settlement amount is reasonable is within the discretion of the trial court"); *Fireman's Fund Ins. Co. v. Imbesi*, 361 N.J. Super. 539, 826 A.2d 735, 750 (Ct. App. Div. 2003) ("[I]t is the court's obligation to conduct an

independent review of the Settlement in order to determine whether it is reasonable and made in good faith."); *Midwestern Indem. Co. v. Laikin*, 119 F. Supp. 2d 831, 844 (S.D. Ind. 2000) ("[T]he court believes the Supreme Court of Indiana would instruct trial courts to resolve a challenge to the reasonableness of a consent judgment with a covenant not to execute . . . .").[4] And the Arizona Supreme Court has framed this issue as one in which the trial court engages. *Parking Concepts, Inc. v. Tenney*, 207 Ariz. 19, 24, 83 P.3d 19 (2004) ("[W]hen evaluating a *Morris*[5] settlement for reasonableness, the *superior court* should apply the same criteria that must be applied by the insurer under its implied contractual covenant of good faith and fair dealing in evaluating a settlement proposal in the absence of a reservation of rights." (emphasis added)).

¶23 Farmers cites two contrary cases—*Great Divide Ins. Co. v. Carpenter*, 79 P.3d 599, 613-14 (Alaska 2003) and *Six v. Am. Family Mut. Ins. Co.*, 558 N.W.2d 205, 207 (Iowa 1997). But these cases provide no rationale or discussion to support its jury trial right conclusion. We find them unpersuasive.

¶24 Farmers also relies on cases in which insurers are entitled to a jury trial to contest the damages amount in the coverage or bad faith action, unlike in Washington where a reasonable covenant judgment is the presumptive measure of damages. *E.g., Hamilton v. Md. Cas. Co.*, 27 Cal. 4th 718, 41 P.3d 128, 117 Cal. Rptr. 2d 318 (2002) (Where insurer agrees to defend but is excluded from negotiating settle-

---

[4] The *Laikin* case suggests that a party has a constitutional right to a jury determination of reasonableness, but the court there held that there was no jury trial right on reasonableness in that case. *Laikin*, 119 F. Supp. 2d at 844-45 ("A trial on the reasonableness of a settlement would effectively amount to a complex trial within a trial. . . . Such daunting prospects have led the Minnesota court that decided *Miller v. Shugart*, [316 N.W.2d 729 (Minn. 1982)] to hold that such issues of reasonableness should be tried only to a court, not to a jury. *See Alton M. Johnson Co. v. M.A.I. Co.*, 463 N.W.2d 277, 279 (Minn. 1990). The Indiana courts are not likely to adopt that approach of taking such an issue away from a jury where it is genuinely disputed, but they would set a high bar before allowing an insurer who, by definition, has breached its duty to its insured, to impose such a trial on the parties who thought they had settled their dispute.").

[5] *United Servs. Auto. Ass'n v. Morris*, 154 Ariz. 113, 741 P.2d 246 (1987).

ment and covenant not to execute, settlement amount will not be presumptive damages amount.); *State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696 (Tex. 1996) (stipulated judgment without adversarial trial not admissible as evidence against insurer in bad faith case); *Pruyn v. Agric. Ins. Co.*, 36 Cal. App. 4th 500, 42 Cal. Rptr. 2d 295, 314 (1995) (insurer can contest settlement's reasonableness in bad faith case).

¶25 But these cases conflict with *Besel*, 146 Wn.2d 730, which held that an insurer had no right to litigate the reasonableness and good faith issues as part of a subsequent bad faith action. "[T]he amount of a covenant judgment is the presumptive measure of an insured's harm caused by an insurer's bad faith if the covenant judgment is reasonable under the *Chaussee* criteria." *Besel*, 146 Wn.2d at 733. In *Howard v. Royal Specialty Underwriting, Inc.*, 121 Wn. App. 372, 379, 89 P.3d 265 (2004), we addressed a similar argument raised by the insurer:

> Royal also argues that the timing of the hearing was inappropriate because the reasonableness hearing was essentially the damages phase of the bad faith action. The court in *Besel* held that "the amount of a covenant judgment is the presumptive measure of an insured's harm caused by an insurer's tortious bad faith if the covenant judgment is reasonable under the *Chaussee* criteria." *Besel*, 146 Wn.2d 730, 738, 49 P.3d 887 (2002). The fact that a reasonableness determination may have this impact is not a basis to conclude that the procedure is not appropriate, as the Supreme Court, in *Besel*, has already held that a reasonableness hearing in this situation is appropriate.

¶26 And according to established case law, the court determines the reasonableness of a settlement "at the time the parties enter into it." *Brewer v. Fibreboard Corp.*, 127 Wn.2d 512, 541, 901 P.2d 297 (1995) (emphasis omitted); *Mavroudis v. Pittsburgh-Corning Corp.*, 86 Wn. App. 22, 38, 935 P.2d 684 (1997). "Finally, the *Chaussee* criteria protect insurers from excessive judgments especially where, as here, the insurer has notice of the reasonableness hearing

and has an opportunity to argue against the settlement's reasonableness." *Besel*, 146 Wn.2d at 739.

¶27 Farmers next argues that because a reasonableness hearing sets the presumptive measure of damages caused by an insurer's tortious bad faith under *Besel*, the reasonableness hearing is in fact a legal proceeding to establish damages. Therefore, a jury trial right attaches. But as Farmers acknowledges, the jury trial analysis is a historical one. And Farmers cites no history that suggests such reasonableness proceedings existed in 1889. Nor has Farmers suggested that a comparable common law action was a legal one. Near the time our constitution was adopted, the mere fact that a court ruling affected the damages amount awarded to a plaintiff did not deprive plaintiff of the right to trial by jury. *See Kohler v. Fairhaven & New Whatcom Ry.*, 8 Wash. 452, 36 P.3d 253 (1894) (trial court did not err by reducing excessive damages awarded under jury's passion or prejudice; appellate court did not adopt dissent's view that this judicial action interfered with plaintiff's jury trial right). For the reasons discussed above, we hold that the trial court properly denied Farmers' jury trial demand.[6]

## II. *Reasonableness Determination*

¶28 Farmers argues the trial court abused its discretion in finding the covenant judgment reasonable. It contends (1) the settlement was "collusive as a matter of law," (2) the trial court erred when it included treble damages for statutory trespass under RCW 4.24.630, and (3) the trial court erred by finding the settlement value of the property damage claim was 100 percent of the repair cost.

¶29 Bird replies (1) there is no such thing as "collusive as a matter of law," (2) the trial court correctly ruled that Bird would likely prevail on his treble damages claim, and (3) the trial court properly included 100 percent of repair costs in its reasonableness determination.

---

[6] Because the trial court properly denied Farmers' jury trial demand, we do not address its due process challenge. And Farmers does not contend "its procedural [due process] rights were violated in this matter." Appellant's Reply Br. at 16.

A. *Standard of Review*

¶30 This court reviews a trial court's determination regarding whether a settlement is reasonable under an abuse of discretion standard. *Werlinger v. Warner*, 126 Wn. App. 342, 349, 109 P.3d 22 (2005). "A trial court abuses its discretion when its decision is manifestly unreasonable or based upon untenable grounds." *Boguch v. Landover Corp.*, 153 Wn. App. 595, 619, 224 P.3d 795 (2009). "[D]iscretion is abused only where no reasonable person would have taken the view adopted by the trial court." *Carle v. McChord Credit Union*, 65 Wn. App. 93, 111, 827 P.2d 1070 (1992).

¶31 "[T]he finding of reasonableness necessarily involves factual determinations," and "[f]actual determinations will not be disturbed on appeal when . . . they are supported by substantial evidence." *Glover v. Tacoma Gen. Hosp.*, 98 Wn.2d 708, 718, 658 P.2d 1230 (1983). "The trial court heard and saw the witnesses, and was thus afforded an opportunity, which is not possessed by this court, to determine the credibility of the witnesses." *Garofalo v. Commellini*, 169 Wash. 704, 705, 13 P.2d 497 (1932). The trial court's credibility determinations and its resolution of the truth from conflicting evidence will not be disturbed on appeal. *Garofalo*, 169 Wash. at 705; *DuPont v. Dep't of Labor & Indus.*, 46 Wn. App. 471, 479, 730 P.2d 1345 (1986).

¶32 In *Glover*, our Supreme Court set out nine factors courts should consider when determining whether a settlement is reasonable for the purposes of contribution among joint tortfeasors under former RCW 4.22.060 (1981):

> "[T]he releasing person's damages; the merits of the releasing person's liability theory; the merits of the released person's defense theory; the released person's relative faults; the risks and expenses of continued litigation; the released person's ability to pay; any evidence of bad faith, collusion, or fraud; the extent of the releasing person's investigation and preparation of the case; and the interests of the parties not being released."

*Glover*, 98 Wn.2d at 717 (alteration in original) (quoting Br. of Amicus at 12).

¶33 In *Chaussee*, we adopted the same factors to determine the reasonableness of an assignment of coverage and bad faith claims by an insured in exchange for a covenant not to execute from a plaintiff. "No one factor controls and the trial court has the discretion to weigh each case individually." *Chaussee*, 60 Wn. App. at 512. Using these factors to determine whether a settlement is reasonable protects insurers from liability for excessive judgments. *Besel*, 146 Wn.2d at 738.

### B. *Collusion*

¶34 Farmers first argues that the trial court erred by not finding collusion as a matter of law. Farmers relies on *MP Medical Inc. v. Wegman*, 151 Wn. App. 409, 213 P.3d 931 (2009) to support its claim that the trial court erred because the settlement here was collusive as a matter of law without regard for the remaining *Glover/Chaussee* factors. But *Wegman* bears no similarity in law or in fact to this case. There we held that the trial court should have exercised its supervisory authority to prevent an employee from using a writ of execution to take over the opponent's side of the appeal, destroying the process's adversary nature. *Wegman*, 151 Wn. App. at 417. The *Glover* line of cases makes clear that no one factor controls a trial court's determination regarding whether a settlement is reasonable. *Glover*, 98 Wn.2d at 718 ("no one factor should control"). And Farmers' reliance on *Water's Edge Homeowners Ass'n v. Water's Edge Associates*, 152 Wn. App. 572, 216 P.3d 1110 (2009) is misplaced. We explained that "[bad faith, collusion, or fraud] is but one of the *Chaussee* factors that trial courts must consider." *Water's Edge*, 152 Wn. App. at 595. The trial court correctly analyzed collusion as one of the nine factors in its reasonableness determination.[7]

---

[7] Farmers also relies on *Continental Casualty Co. v. Westerfield*, 961 F. Supp. 1502, 1505 (D.N.M. 1997), where the court held that there was collusion as a matter of law. *Westerfield* cited several indicators of bad faith and collusion: " 'unreasonableness, misrepresentation, concealment, secretiveness, lack of serious negotiations on damages, attempts to affect the insurance coverage, profit to the insured, and attempts to harm the interest of the insurer.' " *Westerfield*, 961 F.

¶35 Farmers next argues that no arm's-length negotiation occurred, making the settlement collusive. Farmers relies on *Water's Edge*, which held that the trial court did not err in finding collusion. *Water's Edge*, 152 Wn. App. at 596. But the facts found by the trial court here are materially dissimilar to the facts that plainly troubled the *Water's Edge* court and supported its collusion determination:

(1) counsel for the HOA [Water's Edge Homeowner's Association] contacted [Water's Edge] Associates and KPS [Key Property Services Inc.], adverse parties, without notice to White, wrote a ghost letter for Associates and KPS to send to Farmers critical of White, and recommended that Associates and KPS contact Beal and Harper for independent representation; (2) coverage counsel undermined White's efforts to reduce Associates' and KPS's exposure, presumably by withdrawing White's pending summary judgment motion regarding the HOA's remaining claims; (3) the parties realigned their interests by stipulating that Associates and KPS could recover their $215,000 contribution if the HOA prevailed in its malpractice and bad faith case; (4) the parties appeared to have a joint venture type relationship in which the HOA agreed to kick back some of the proceeds from any recovery from Farmers or White's firm; (5) Beal insisted that the settlement be binding, regardless of the trial court's reasonableness determination; and (6) neither Associates nor KPS had any reason to care what dollar amount they agreed to, so long as they could sell it to the trial court as reasonable.

*Water's Edge*, 152 Wn. App. at 595-96.

¶36 As in *Water's Edge*, we note the trial court dedicated five pages of its reasonableness memorandum to the collusion factor. That ruling shows the court's deliberate and careful review of the relevant case authority, including *Water's Edge* and *Westerfield* and the evidence. It was well aware of the risk of fraud and collusion in these types of

---

Supp. at 1505 (quoting Stephen R. Schmidt, *The Bad Faith Setup*, 29 Tort & Ins. L.J. 705, 727-28 (1994)). This case is neither controlling nor persuasive.

judgments. And its 14-page memorandum ruling[8] reflects the trial court's balanced and thoughtful consideration of all the evidence presented on this question. We conclude substantial evidence supports the trial court's findings of fact on its collusion determination. *See* Clerk's Papers (CP) at 3435-40 (Mem. Ruling).

### C. *Reasonableness*

¶37 Farmers contends, "[T]he trial court misconstrued RCW 4.24.630 and erroneously concluded that Bird's claim for statutory trespass had substantial settlement value." Appellant's Br. at 49. It cites two grounds to support this claim: (1) "RCW 4.24.630 requires an intent to cause harm, not simply an intent to act," Appellant's Br. at 50, and (2) "Bird did not plead and could not reasonably have pled or proved a statutory trespass claim." Appellant's Br. at 54. We disagree.

¶38 RCW 4.24.630(1) provides:

> Every person who goes onto the land of another and who . . . wrongfully injures personal property or improvements to real estate on the land, is liable to the injured party for treble the amount of the damages caused by the removal, waste or injury. For purposes of this section, a person acts "wrongfully" if the person intentionally and unreasonably commits the act or acts while knowing, or having reason to know, that he or she lacks authorization to so act.

¶39 First, Farmers' "intent to cause harm" argument misconstrues our recent decision in *Clipse v. Michels Pipeline Construction, Inc.*, 154 Wn. App. 573, 225 P.3d 492 (2010). In *Clipse*, we addressed "what elements are required to establish statutory trespass under RCW 4.24.630." *Clipse*, 154 Wn. App. at 576. "Given the context of related statutes, legislative history, and the statute's interpretation by other courts, we hold that RCW 4.24.630 requires a showing that the defendant intentionally and unreasonably committed one or more acts *and* knew or had reason to

---

[8] This opinion refers to the trial court's order on reasonableness as a "memorandum ruling."

know that he or she lacked authorization." *Clipse*, 154 Wn. App. at 580. And Farmers' reliance on *Standing Rock Homeowners Ass'n v. Misich*, 106 Wn. App. 231, 23 P.3d 520 (2001) is likewise misplaced. There, we reasoned, " 'Defendant's actions in destroying the gates were wrongful in that defendant acted intentionally and while having reason to know that he lacked authorization to so act.' " *Misich*, 106 Wn. App. at 244 (quoting Conclusion of Law 9). Neither case stands for the proposition urged by Farmers.[9] And Farmers cites no controlling Washington authority that holds an RCW 4.24.630 claimant must establish an intent to cause harm as an element of its statutory trespass claim.

¶40 We turn next to Farmers' pleading deficiency claim. While Farmers argues, "The trial court found that . . . Bird could have amended his complaint to include a claim for statutory trespass under RCW 4.24.630 . . . ," no such finding exists in the trial court's memorandum ruling. Appellant's Br. at 54.

¶41 Under the circumstances here, whether Bird could have amended his complaint is not material.[10] The trial court is directed by CR 54(c) to grant relief to a party entitled to relief even if the party has not demanded such relief in his pleadings. CR 54(c) provides, "Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." Thus, if the trial court finds merit in a claim, the court is obligated by CR 54(c) to grant that relief even though the claim has not been included in the original pleadings. *State ex rel. A.N.C. v. Grenley*, 91 Wn. App. 919, 930, 959 P.2d 1130 (1998).

¶42 In addition, if a party argued a claim to the trial court that was not included in the original pleadings, the

---

[9] We also note that a trial court granted summary judgment in favor of Bird on his common law trespass claim and left for trial the nature and extent of damages.

[10] CR 9(g) requires that any demand for special damages be specifically stated in the pleadings.

court may treat that claim as if it had been pleaded. *See Allstot v. Edwards*, 114 Wn. App. 625, 60 P.3d 601 (2002) (claim for special damages that was argued and ruled on in trial court treated as if it had been pleaded even though claim was not included in original pleadings; decision based on CR 54 rather than CR 15).[11]

¶43 Our review of the record shows substantial evidence to support the trial court's findings that "Bird had a 75% chance of prevailing on a claim for statutory trespass." Appellant's Br. at 3. Because Farmers' assertion that "the trial court lacked substantial evidence to find Bird had a 75% chance of prevailing on a claim for statutory trespass" (Appellant's Br. at 54) is premised on an erroneous legal standard—"Bird would have had to prove that Best Plumbing intended to cause harm"—as discussed above, this claim fails. Appellant's Br. at 57.

¶44 Farmers next contends, "There is no evidence to support the trial court's finding that the settlement value of Bird's property damage claim against Best Plumbing was 100% of Bird's alleged cost of repair." Appellant's Br. at 58. "A trial court's finding of reasonableness is a factual determination that will not be disturbed on appeal when supported by substantial evidence." *Brewer*, 127 Wn.2d at 524. But Farmers did not assign error to the trial court's findings on this point. Thus, they are verities on appeal. *Zunino v. Rajewski*, 140 Wn. App. 215, 220, 165 P.3d 57 (2007).

> The damage done to Mr. Bird's property and to his and his wife's enjoyment of life because of the slide damage were stunningly depicted both by his own testimony and by the exhibits prepared for trial. No persuasive evidence emerged that there were historical problems with respect to the stability of his property. The assertions that Mr. Bird himself caused the slides and resulting damage lacked a theory as to intent. Furthermore, ample expert testimony supported Plaintiff's

---

[11] Bird's complaint pleaded a trespass cause of action, and a trial court granted summary judgment on liability and proximate cause to Bird on this claim, leaving the damages question for trial.

theory that a pipe leaking over time caused the devastating damage. On the other hand, Defense experts' changing theories weakened their claims, and Defendant's original trial counsel assessed their chances at trial as worsening as of December, 2008. Therefore, the settlement reflecting a 100% recovery on this issue was reasonable.

CP at 3444 (Mem. Ruling). And our review of the record, which exceeds 3,000 pages, demonstrates the trial court's finding of reasonableness is amply supported by the record.

## CONCLUSION

¶45 Here, the trial court examined the *Chaussee/Glover* factors and specifically found in light of those factors that the settlement was reasonable and not the product of fraud or collusion. In its memorandum ruling, the trial court examined each of the *Chaussee/Glover* factors and specifically addressed those factors in its ruling. The evidence submitted in support of the motion for a finding of reasonableness was voluminous, constituting well over several thousand pages, and included testimony from several witnesses. The trial court had sufficient information before it to make an informed reasonableness determination. Given the extent of damages, Best Plumbing's liability and financial circumstances, and the risks and costs of future litigation, the trial court did not abuse its discretion in determining that $3,989,914.83 was a reasonable settlement.[12] And the trial court properly denied Farmers' jury trial demand.

¶46 We affirm.

Cox and APPELWICK, JJ., concur.

Reconsideration denied April 27, 2011.

Review granted at 172 Wn.2d 1010 (2011).

[12] The consent judgment was $3.75 million, but the trial court concluded $3,989,914 was a reasonable settlement.