**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| In the Matter of the Parenting and Support of<br><br>J.C.,<br>　　　　　　　Minor Child.<br><br><br>CHARLES CALVEY III,<br><br>　　　　　　　Appellant,<br><br>　　　and<br><br>CHERECE MARIE WALKER,<br><br>　　　　　　　Respondent. | No. 83061-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

MANN, J. — Charles Calvey III appeals the entry of a final parenting plan with RCW 26.09.191 restrictions and a long-term protection order. On appeal, Calvey argues that the trial court abused its discretion in weighing the credibility of witnesses and that substantial evidence does not support the trial court's findings. We affirm.

<u>FACTS</u>

In 2015, Cherece Walker and Calvey met online and started dating. In 2017, Walker became pregnant with the couple's child. Walker lived with Calvey for about three months while pregnant and then moved out of his home into her own apartment on October 1, 2017. The couple's child, JC, was born on February 18, 2018.

Walker testified that Calvey abused her and that she never knew how he would behave. Walker claimed Calvey would rip her wearable birth control patches off her body and force her to have sex with him. Calvey abused Walker including, slapping and punching her, pulling her hair, locking her in rooms, pouring water on her, and preventing her from going to work. Walker also states that Calvey slit her sofa open with a butcher knife, broke her laptop, and broke her cell phones. Many of these incidents of abuse occurred in front of JC and Walker's other child from a previous relationship.

Besides abuse, Calvey threatened Walker with kidnapping, abandonment, and stabbing her with an AIDS-infected needle. He told her that the only way she could end their relationship was if she died and he threatened to kill her and her grandmother.

Walker ended their relationship on September 22, 2019. Calvey refused to leave and then took JC out of bed and to his car. Walker called the police and they escorted her while she removed JC from the car. On September 23, 2019, Calvey returned to Walker's home and demanded to be let inside. Calvey was arrested and issued a no-contact order. The next day, Kent Municipal court charged Calvey with violating the no-contact order.

On February 7, 2020, Calvey pleaded guilty to violating the no-contact order and Walker was granted a criminal no-contact order against Calvey. On October 3, 2019, Walker petitioned for a domestic violence protection order (DVPO). Following a hearing on the record, a commissioner granted Walker's protection order for one year and included both children. The commissioner found that "[t]he court has concerns re:

[Respondent Calvey's] credibility." Calvey moved for revision of the protection order, which was denied.

On November 18, 2020, Walker filed for a long-term renewal of the protection order. A hearing on the renewal was held on December 10, 2020. Following argument, the commissioner found that "[g]iven Mr. Calvey's strongly-held belief he has not perpetrated any DV, despite the serious concerns about his behavior as explained by two qualified assessors state-certified in DV treatment, the court grants Ms. Walker's request for a renewal of longer than 1 year."

The commissioner entered two separate orders denying Calvey's motion to vacate the protection order and modify/terminate the protection order. The commissioner found:

> The 11/22/19 DVPO was decided at a full and fair contested hearing, and that decision was upheld by Judge Whedbee on revision, in an order in which he adopted all the findings of the commissioner below. Mr. Calvey has not complied with the DVPO in the last year insofar as he has not availed himself to the treatment/services ordered, he did not avail himself of the supervised visitation he is entitled to with the parties' child under the temporary parenting plan referenced in the DVPO.
>
> Any changes in circumstances since entry of the DVPO do not exist as a basis to modify or terminate the DVPO.

Family Court Services (FCS) investigator Holly Bernard completed a parenting plan evaluation report released on February 16, 2021. Bernard recommended RCW 26.09.191 findings for domestic violence perpetrated against Walker and that JC should remain in the primary care of Walker. Bernard further recommended that visitation for Calvey should be phased-in and contingent upon his progress in Level 4 state-certified

domestic violence treatment, and a parenting education course with an emphasis on the impact of domestic violence.

This appeal concerns two linked cases, the petition to establish a parenting plan and to renew a protection order. The FCS evaluator found and recommended RCW 26.09.191 domestic violence restrictions against Calvey with no concerns about Walker's parenting. Both parties appeared at trial from June 7 through 11, 2021. The court heard testimony from 13 witnesses. On June 18, 2021, the court entered findings of fact and conclusions of law, a final parenting plan, and a long-term protection order renewal.

The trial court found credibility issues central to the case. It found that Calvey's testimony was not credible, specifically his recount of the domestic violence. It also did not find any of Calvey's witnesses credible. Nor did the court find that Walker met her burden of proof on Calvey's alleged abandonment of JC or refusal to perform parenting functions during the pendency of the matter.

The trial court found that Calvey engaged in acts of domestic violence as defined in RCW 26.50.010(3) and adopted the FCS evaluator's recommended restrictions on Calvey's parenting. The court also found that the one-year limitation of RCW 26.50.060(2) did not apply and thus granted an order of protection with a 15-year duration.

Calvey appeals.

## ANALYSIS

A. Standard of Review

We review a trial court's decision to grant or deny a DVPO and decisions regarding parental decision making for abuse of discretion. In re Parentage of T.W.J., 193 Wn. App. 1, 6, 367 P.3d 607 (2016); In re Marriage of Jensen-Branch, 78 Wn. App. 482, 490, 899 P.2d 803 (1995). A trial court abuses its discretion where its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. T.W.J., 193 Wn. App. at 6; In re Marriage of Katare, 175 Wn.2d 23, 35, 283 P.3d 546 (2012). Notably, "[t]he trial court's credibility determinations and its resolution of the truth from conflicting evidence will not be disturbed on appeal." Bird v. Best Plumbing Grp., LLC, 161 Wn. App. 510, 525, 260 P.3d 209, 217 (2011), aff'd, 175 Wn.2d 756, 287 P.3d 551 (2012). In a DVPO hearing, the court may consider hearsay evidence, as long as it gives appropriate weight to competing evidence. Gourley v. Gourley, 158 Wn.2d 460, 467, 145 P.3d 1185 (2006) (hearsay rules do not apply to protection order proceedings).

We review the trial court's findings of fact for substantial evidence and conclusions of law de novo. In re Marriage of Zier, 136 Wn. App. 40, 45, 147 P.3d 624 (2006). "Substantial evidence is a quantum of evidence sufficient to persuade a rational fair-minded person that the premise is true." Thompson v. Hanson, 142 Wn. App. 53, 60, 174 P.3d 120 (2007).

B. Credibility

Calvey argues that the trial court erred in relying on the testimony of Walker while ignoring the testimony of Calvey and his witnesses. We disagree.

"The trial court heard and saw the witnesses, and was thus afforded an opportunity, which is not possessed by this court, to determine the credibility of the witnesses." Bird, 161 Wn. App. at 525 (quoting Garofalo v. Commellini, 169 Wash. 704, 705, 13 P.2d 497 (1932)).

The trial court stated that it "does not find that Mr. Calvey's testimony, in particular his testimony regarding the acts of domestic violence, credible. In making this assessment, the court observed Calvey's demeanor throughout the entire trial, both when testifying, listening to testimony and in asking questions." The trial court "observed two different Mr. Calveys and finds that Ms. Walker's characterization of him having a Jekyll and Hyde personality particularly apt." The trial court was also concerned that Calvey, "particularly during his questioning, [sought] to intimidate Ms. Walker. He often made facial expressions and moved his face very close to the video camera in an attempt to intimidate Ms. Walker."

The trial court properly exercised its discretion in weighing the credibility of the witnesses. First, the trial court assessed the credibility of Calvey and the credibility of his and Walker's witnesses. For example, the trial court found that the testimony of Calvey's mother, Deneen Stevenson, undermined Calvey's own testimony regarding photographic evidence of his abuse. Stevenson answered that she did not see any bruises or bumps on Walker. This testimony undercuts the theory that the bruises and bumps on Walker's head occurred before her New Orleans trip, in contradiction with other testimony from Calvey's family that Walker had the bumps and bruises when she was in New Orleans.

Second, the court found Walker's and Bernard's testimony credible, and properly relied on this testimony in making its ruling. As for Walker, the court found her actions consisted with a survivor of domestic violence and her testimony credible:

> All of the actions just described [of Walker] are consistent with someone who is [in] constant fear of their life and for the safety of their children. They demonstrate objective evidence that corroborates all of her testimony. All of Ms. Walker's actions are consistent with someone who is the victim of domestic violence and who is simply too afraid for her own safety and the safety of her own children to get out of the cycle of domestic violence. Domestic violence is ultimately about power and control. And Ms. Walker testified candidly—candidly and credibly about the pain and fear that Mr. Calvey instilled in her.

The court also admitted Bernard's parenting evaluation into evidence under RCW 26.09.220. Furthermore, as the Bird court held, credibility determinations and resolving the truth from conflicting witnesses are not matters to be disturbed on appeal. Bird, 161 Wn. App. at 525. Thus, the trial court's reliance on the testimony of Walker and Bernard, and determination that other witnesses were not credible, was properly within the discretion of the trial court.

Finally, the trial court did not only consider Walker and Bernard's testimony, rather, it relied on multiple forms of evidence including photographs, videos, text messages, call logs, prior court orders, the FCS parenting evaluation, and the testimony of all witnesses.

## C. RCW 26.09.191 Restrictions

Calvey argues that the trial court erred in finding RCW 26.09.191 restrictions based on domestic violence. We disagree.

RCW 26.09.191(1) and (2)(a) require limitations in the parenting plan if the court finds that a parent has "a history of acts of domestic violence as defined in RCW

26.50.010(3)." RCW 26.09.191(1), (2). Former RCW 26.50.010(3) (2019) defines domestic violence as (1) "Physical harm, bodily injury or assault, or the infliction of fear of imminent physical harm, bodily injury or assault, sexual assault, or stalking as defined in RCW 9A.46.110 of one intimate partner by another intimate partner."

Here, the parenting plan and the findings of fact and conclusions of law thoroughly set forth findings of a history of domestic violence by Calvey, Walker's fear of ongoing violence by him, and lethality risks Walker faced. And the court's oral rulings also support these findings. In re Det. of LaBelle, 107 Wn.2d 196, 218, 728 P.2d 138 (1986) (holding that written findings of fact may be supplemented by the trial court's oral decision or statements in the record).

This case is distinguishable from Lawrence v. Lawrence, 105 Wn. App. 683, 686, 20 P.3d 972 (2001). There, the trial court's findings of fact and oral ruling were so incomplete that the appellate court could not determine how the trial court made its decision. Lawrence, 105 Wn. App. at 686. Conversely, here, the trial court laid out a thorough factual basis for imposing RCW 26.09.191 restrictions on Calvey in the parenting plan, finding that "Charles Calvey III . . . has a history of domestic violence as defined in RCW 26.50.010." The court also stated:

> [T]he nature and specificity of the threats, as well as the violent actions of Mr. Calvey, suggest the potential for lethality unless Mr. Calvey undergoes domestic violence treatment and therapy. Level four treatment, the highest level of treatment there is, will be required. The Court finds that Mr. Calvey has engaged in a history of acts of domestic violence and therefore mandatory restrictions under RCW 26.09.191 are required.

Furthermore, substantial evidence in the record supports the trial court's findings. The court determined that Bernard was credible as an expert and admitted her

parenting evaluation into evidence. Bernard's evaluation was based on police reports and hearsay statements, and included 10 pages of details about what she relied on, including interviews with Calvey and Walker. Bernard testified, "[r]egarding a final parenting plan I recommended that there be a RCW restriction for a history of domestic violence within this case." Bernard also recommended sole decision-making authority for Walker, dispute resolution through the court, and JC's primary residential time spent with Walker with a phased in visitation schedule for Calvey.

The court asked Bernard about the lethality assessment of Calvey's actions. Bernard testified that "[w]hat concerns me is the lethality factors in those threats, specifically any threat to be shot and killed alarms me of concerns of weapons. And I would, in this case, consider HIV-infected needles some type of weapon, as well. So that—that raises my concern to the lethality factors."

The court addressed Calvey's hearsay concerns as well. It clarified:

[T]o the extent the Court will be considering the report to understand the recommendations of Ms. Bernard but the facts contained in the report are—I'm not taking it for the truth of the matter asserted. So in other words, for example, if there's a statement about what occurred on X date between you and someone, Mr. Calvey, I'm not going to read the report and take that as an established fact because that is hearsay in the document. There's a special exception for these types of reports in the RCW, and I'm going to allow the report to come in; but it's not coming in as substantive evidence of the underlying facts contained in the report.

The trial court's findings are also supported by Walker's testimony that she was afraid of Calvey. Walker was afraid and called the police on September 22, 2019. The court based its domestic violence findings using the applicable legal standard in RCW 26.09.191(1) and (2)(a). The court did not abuse its discretion in finding that Walker

suffered domestic violence and it caused her to fear imminent physical harm, bodily injury or assault, and that RCW 26.09.191 restrictions were proper.

The limitations in the final parenting plan are "reasonably calculated to protect the child from the physical, . . . emotional abuse or harm that could result if the child has contact with the parent requesting residential time." RCW 26.09.191(m)(i). The court made specific findings stating why a protective parenting plan is in JC's best interest: "[JC] has been exposed to domestic violence. In fact, the testimony shows that he suffered from poor sleep, being overly fussy, and jumped every time someone knocked on the door. He is already exhibiting signs of trauma and psychological harm as a result of Mr. Calvey's violent and aggressive outbursts." The court explained Calvey's need for treatment before increasing visitation with JC:

> Unless and until Mr. Calvey takes responsibility for his actions and becomes accountable for his actions, his time with the child will be severely limited. The choice to take responsibility and follow this court's orders are up to Mr. Calvey because [JC] needs a father who understands the impacts domestic violence has on Ms. Walker and [JC].

Prior to domestic violence treatment, Calvey is allowed two hours of supervised visits with JC each week. After 12 months of Level 4 state-certified domestic violence treatment, Calvey may increase visitation to 5 hours per week supervised. Upon completion of domestic violence treatment and regular use of visitation time, Calvey may increase visitation to seven hours a week, unsupervised. The trial court enumerated further staged visitation including sending recorded messages, overnight visits every other weekend, and special holidays and occasions with JC.

The trial court narrowly tailored the plan to protect JC while allowing Calvey the opportunity to improve and earn more access and visitation when he demonstrated

-10-

successful treatment. The orders are "reasonably calculated to provide for the safety of the parent who may be at risk of physical, sexual, or emotional abuse or harm that could result if the parent has contact with the parent requesting residential time" by limiting the interaction between Walker and Calvey, while holding him accountable for his behaviors. RCW 26.09.191(m)(i).

D. Long-Term Protection Order

Calvey argues that the court improperly entered the long-term protection order. We disagree.

The trial court found that Calvey is likely to resume acts of domestic violence when the order expires as required by RCW 26.50.060(3). It entered the long-term protection order set to expire on June 14, 2036. In City of Seattle v. May, 151 Wn. App. 694, 698, 213 P.3d 945 (2009), the court stated that "there is nothing in chapter 26.50 RCW requiring that the issuing court's finding as to further acts of domestic violence appear on the face of the protection order," and that "there is no requirement that the order contain the issuing court's finding required by RCW 26.50.060(2) as a condition for making the order permanent."

Here, the trial court's oral ruling also explains the basis for entering the long-term protection order, specifically:

> Testimony at trial as laid out above was chilling and frightening, and Ms. Walker credibly testified about a longstanding pattern of domestic violence and many of these acts occurred in front of both of the children. This, coupled with the fact that Mr. Calvey has refused to comply with the treatment requirements of the prior orders, and continues to deny his extensive history of domestic violence, leads the Court to conclude that absent a protection order Mr. Calvey will resume acts of domestic violence when the order expires in December 2022.

Here, relying on credible testimony and evidence admitted at trial, the court did not abuse its discretion in entering the long-term protection order renewal.

Affirmed.

Mann, J.

WE CONCUR:

Bowman, J.          Dwyer, J.