[No. 599.  Decided January 29, 1889.]

## GEORGE DACRES v. OREGON RAILWAY & NAVIGATION COMPANY.

RAILROAD  COMPANIES — KILLING  STOCK — CONSTITUTIONAL  LAW —
RIGHT TO JURY — TITLE OF ACT — FAILURE TO FENCE — EVIDENCE
OF NEGLIGENCE.

Act Wash. T., 1883, §§ 2–7, providing that when stock is killed on
a railroad the value shall be ascertained by appraisers in a pre-

scribed manner, and the amount shall thereupon become due and payable, are unconstitutional as denying the right of jury trial.

Sections 1 and 8 of the act making the railroad company liable for all stock killed on the track, unless it is fenced, are constitutional, and are not so connected with the rest of the act as to become invalid therewith.

Section 1 of the act which makes the railroad company liable for stock killed on the railroad is not merely declaratory of the common law, but, as shown by § 8, which removes the liability if proper fence is maintained, the statute makes failure to fence evidence of negligence.

The title of the act being "An act to secure to the owners of live stock payment of the full value of all animals killed or maimed by railroad trains," sections 1 and 8 are not invalid, as embracing more than one object not sufficiently expressed in the title.

*Appeal from District Court, Walla Walla County.*

Action by George Dacres against the Oregon Railway & Navigation Company for damages for the killing of stock.  Judgment for defendant, and plaintiff appeals.

*B. L. & J. L. Sharpstein*, for appellant.

*Dolph, Bellinger, Mallory & Simon*, for appellee.

The opinion of the court was delivered by

BURKE, C. J. — This was an action brought by the appellant against the appellee to recover damages for the killing of an animal by a train of cars on appellee's railway.  It appeared upon the trial that the plaintiff was the owner of a farm in Walla Walla county; that the defendant had constructed and was operating its railway through this farm; that defendant's railway was not fenced on either side along its right-of-way; that the plaintiff was the owner of the animal in question; that the animal entered upon the railway track from the farm, and was killed by a passing train.  It was in proof that the value of the animal was from $350 to $500.  There was no proof of negligence on the part of the railway company, apart from the fact that

the railway was not fenced. The defendant moved for a nonsuit, which the court granted, and after overruling a motion for a new trial, which was made by the plaintiff, judgment was given for the defendant, from which plaintiff appeals to this court.

The principal question involved in this case is, the constitutionality of what is known as the " railway fence law " of 1883. The plaintiff's action must stand or fall with this law; for if his rights are to be determined by the rules of the common law, he has not made out a case against the company, because he neither proved, nor attempted to prove, any negligence or want of ordinary care on the part of the company or its agents. At common law railway companies were under no obligations to fence their tracks; nor were they liable to an action for damages for the killing of stock, except in cases where the stock being rightfully on adjoining premises, entered upon the railway track, and while there were killed through the negligence of the railway company or its agents. 1 Rorer, R. R., 614, 615; *Corwin v. New York & Erie R. R. Co.*, 13 N. Y. 42, 45; 3 Wood, Ry. Law, 1543. But in view of the great extension and multiplication of railways, it was long since found necessary to change the common law in this respect, and it has accordingly been changed by statute in most, if not all, the states of the Union, and even in England. The statute on the subject passed in this territory, and the one now in question here, is as follows:

"AN ACT to secure to the owners of live stock payment of the full value of all animals killed or maimed by railroad trains."

" *Be it enacted by the Legislative Assembly of Washington Territory :*

" SECTION 1. That all railroad companies owning or operating lines of railway within the Territory of Washington shall be liable to the owners of all live stock for the full value of all such live stock killed or maimed by their passing trains.

" SEC. 2. The value of all animals killed or maimed by railroad companies shall be ascertained and fixed by appraisement as follows to wit: The owners of the stock so killed or maimed shall be entitled to the appointment of one appraiser, and the railroad com-

pany to the appointment of one appraiser, and if the two so appointed shall not agree, they shall select the third appraiser, and the three appraisers shall fix the value: *Provided,* That in ascertaining and fixing the value of said stock, the appraisers herein provided for shall consider the real market value of such stock, whether for breeding or other purposes.

"SEC. 3. Whenever any live stock is killed or maimed by the passing locomotive or train of any railroad company, it shall be the duty of the owner of such stock to report the same to the company, and ask the appointment of an appraiser, which appraiser shall be appointed and required to act in making such appraisement within ten days after such notice is given; and if said company fail or refuse to appoint said appraiser, or said appraiser shall fail from any cause to act within ten days from said notice, then the owner of such stock shall appoint an appraiser on his own behalf, and shall report the same to the county auditor, who shall, thereupon, act as such second appraiser, and in case the two cannot agree as to the value of the animal, or animals, killed or maimed, then they shall appoint a third appraiser, and the value assessed by a majority shall be the value of said animal, or animals, or value of damage done thereto.

"SEC. 4. The notice required in the preceding section shall be given upon the superintendent of such company, for the particular division in which the killing occurred, or to a local business manager, or agent thereof. Such notice shall be in writing and shall contain the date, as near as can be, and the place at or near which said stock was killed or maimed, together with the number and kind of the same.

SEC. 5. As soon as the value of such animals, or the amount of damage done thereto, shall be ascertained, as hereinbefore provided, the amount of such assessment shall thereupon become due and payable, with interest from date of said assessment at the rate of one per cent. per month, and said amount, together with interest and costs, including attorney's fees, now allowed as costs in the district court, may be recovered by suit, in any court having jurisdiction thereof.

SEC. 6. The appraisers, provided for in this act, shall be entitled for their services to the sum of two dollars per day, and mileage at the rate of ten cents per mile, which said costs shall be borne equally by both parties.

"SEC. 7. All acts and parts of acts inconsistent with the provisions of this act are hereby repealed.

"SEC. 8. No railroad company shall be liable for stock killed upon their roads when the same is fenced by such company with a good, lawful fence.

"SEC. 9. This act shall take effect and be in force from and after its approval.

"Approved Nov. 28, 1883."

It is conceded in the brief filed by appellant's counsel in this cause, and also by counsel in argument before this court, that §§ 2, 3, 4, 5, 6, and 7 of this act are unconstitutional because they deny the right of trial by jury; and of this there can be no question. The territorial legislature has no power to deprive any person or corporation of the right of trial by jury in a common-law action, where the amount involved exceeds $20. 7th Amend. Const. U. S.; *Parsons v. Bedford,* 3 Pet. 433; *Thomas v. Hilton,* 3 Wash. T. 365. Nevertheless this is clearly what the legislature attempted to do by the system of procedure provided in §§ 2, 3, 4, 5, 6, and 7 of this act. The question then arises: Is the whole act void by reason of the unconstitutionality of the sections named? Questions of this character have been much discussed by the courts of this country, and the proper rule of statutory construction in such cases seems now to be well settled. This rule is nowhere more clearly or more concisely expressed than in Judge Cooley's work on Constitutional Limitations, in which it is laid down as follows:

" Where, therefore, a part of a statute is unconstitutional, that fact does not authorize courts to declare the remainder void also, unless all the provisions are connected in subject-matter depending on each other, operating together for the same purpose, or otherwise so connected together in meaning, that it cannot be presumed the legislature would have passed the one without the other. . . If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained." Cooley, Const. Lim. (5th ed.), 212; star page 178.

Turning, now, to an examination of the statute under discussion, it is plain to be seen that the general object

34 — 1 WASH.

which the legislature had in view in its passage was to en-
large and extend the rights of owners of live stock as
against railway companies, in cases where such stock should
be killed or maimed by passing railway trains.   The means
employed by the legislature in this act to attain this object
were two-fold: *First*, by making railway companies liable
for the killing or maiming of live stock so long as the rail-
ways are not properly fenced; *second*, by providing a cheap,
simply and prompt remedy for the enforcement of the
rights thus conferred.   It is conceded upon all hands, as
we have seen, that this second provision is unconstitutional,
and, under the rule of construction above mentioned, if
these two provisions are so connected in subject-matter or
in meaning that it cannot be presumed that the legislature
would have passed the one without the other, then both
provisions must fall together.   This is not, however, our
view of the statute.   It seems to us that these two provis-
ions are easily separable; that they are not depending upon
each other, and are not so intimately connected that one
may not exist without the other.   Under any fair reading
of this statute it must appear that after striking out the
unconstitutional portions, that is, §§ 2, 3, 4, 5, 6 and 7,
" that which remains is complete in itself, and is capable of
being executed in accordance with the apparent legislative
intent, wholly independent of that which was rejected."
Counsel for appellee strongly urged in argument that the
two parts of this statute are so " mutually connected with
and dependent on each other, as conditions, considerations
or compensations for each other, as to warrant the belief
that the legislature intended them as a whole, and if all
could not be carried into effect the legislature would not
pass the residue independently."   But we see no good rea-
son to suppose that if the unconstitutionality of the sections
relating to the proposed remedy had been known to the
legislature, they would therefore refuse to pass the section
conferring enlarged rights upon the persons for whose bene-

fit the other portions of the statute were framed. On the contrary, there is the more reason to believe that the legislature, finding themselves unable to extend the relief intended by the void sections, would be the more inclined to enact the law embodied in §§ 1 and 8. These two sections make a sensible and reasonable law; a law essentially the same as that which may now be found upon the statute books of many of the states of the Union. And it may not be out of place here to observe that legislation of this kind has been commended in the strongest terms of some of the highest courts in this country. *Corwin v. Railroad Co.,* 13 N. Y. 42; *Railway Co. v. Humes,* 115 U. S. 512. Of course it goes without saying that courts have nothing to do with the policy or impolicy of a law; that belongs to the province of another department. But where, as in the case at bar, it becomes important to inquire whether the legislature would have passed one part of a statute without the other, then it is proper, as a means of arriving at the legislative intent, to consider the law in all its bearings.

It was contended upon the argument that the construction of § 1, standing alone, would be necessarily different from that which would be given to it in its proper connection with the other sections of the act, taken as a whole; that, for instance, reading § 1 out of its present connection, it would seem as if it provided that if an animal was injured, however slightly, by a passing train, the company would be liable, not for the amount of damage done to the animal, but for its full value; whereas if the section is to be read in connection with the other sections of the act, it becomes apparent at once that the legislature never intended any such construction. A careful reading of this statute will readily show that this argument is not well founded; and that, whether standing with § 8, or in connection with the other sections of the act, § 1 is fairly open to but one construction, and that is this: Where an animal being lawfully upon

adjoining land, thence escapes upon a railway track at a place which is not fenced, but which the company may properly and lawfully fence, and the animal is killed by a passing train, the company is liable for the value of the animal, if killed; and if injured, but not killed, for the amount of damages caused by the injury.

Our attention has been called to the case of *Timm v. Northern Pacific R. R. Co.*, a case decided by this court at the January term, 1887, and reported in 3 Wash. T. 299; and it is insisted that this statute was necessarily passed upon in that case, and held to be void. The court below based its rulings in this case on *Timm v. Northern Pacific R. R. Co.* We have looked into the record of that case, and we find the statute was never referred to, either in the briefs of counsel or in the opinion of the court. The statute was not passed upon in that case, for it was entirely overlooked.

It was contended in argument that even if § 1 is to stand, it must be construed to be simply declaratory of the common law,. and in that case the judgment of the court below would have to be affirmed. We cannot agree with counsel in this construction of the statute. No doubt the rule is that statutes in derogation of the common law must be strictly construed; but this rule, like all others, must have a reasonable application; and to hold that § 1 is simply declaratory of the common law would not be a reasonable application, but a perversion of the rule, because it would result in plainly defeating the manifest object of the legislature. It is evident upon the face of this statute that the legislature intended to make the neglect or failure of railway companies to fence their railways evidence of negligence. This is made clear by § 8, which exempts companies from liability for the killing of live stock where the railways are properly fenced. Indeed, in view of § 8, the construction sought to be put upon § 1 by the appellee would result in

giving us a law almost the reverse of that evidently intended by the legislature.

Upon the argument of the case before the court it was suggested rather than argued that §§ 1 and 8 were invalid under our organic act (§ 1924, Rev. St. U. S.), which provides that "every law shall embrace but one object, and that shall be expressed in the title." This objection is not well taken. This act has but one object, and that is sufficiently expressed in the title. Besides, the rule is that such a constitutional provision is to be liberally construed. Cooley, Const. Lim. (5th ed.), 176, star p. 146; *State v. Newark*, 34 N. J. Law. 264; *Gifford v. New Jersey R. R. Co.*, 10 N. J. Eq. 171; *Kurtz v. People*, 33 Mich. 279; *Allegheny County Home's Case*, 77 Pa. St. 77; *In re Metropolitan Gas Light Co.*, 85 N. Y. 528.

Our conclusion upon the whole case is, that §§ 2, 3, 4, 5, 6 and 7 of the act of 1883 entitled "An act to secure to the owners of live stock payment of the full value of all animals killed or maimed by railroad trains" are unconstitutional and void, and that §§ 1 and 8 are valid and binding, and should stand. For these reasons the judgment of the court below will be reversed, and the cause remanded for a new trial; and upon the new trial leave should be granted to amend the complaint to conform to the proofs.

ALLYN and NASH, JJ., concur.