[No. 86109-9. En Banc.]
Argued January 26, 2012. Decided October 25, 2012.

JAMES A. BIRD, *Respondent*, v. BEST PLUMBING GROUP, LLC, *Respondent*, CONTRACTORS BONDING INSURANCE COMPANY BOND NO. SF3262, *Defendant*, FARMERS INSURANCE EXCHANGE, *Petitioner.*

ALLSTATE INSURANCE COMPANY, *as Subrogee, Plaintiff*, v. BEST PLUMBING AND HEATING, INC., *Respondent*, FARMERS INSURANCE EXCHANGE, *Petitioner.*

758

*Jerret E. Sale, Deborah L. Carstens,* and *Douglas G. Houser* (of *Bullivant Houser Bailey PC*) and *Philip A. Talmadge* (of *Talmadge/Fitzpatrick*), for petitioner.

*William C. Smart* and *Isaac Ruiz* (of *Keller Rohrback LLP*); *Jeffrey I. Tilden* (of *Gordon Tilden Thomas & Cordell LLP*); *Andrew J. Kinstler* (of *Helsell Fetterman LLP*); and *A. Richard Dykstra* (of *Friedman Rubin*), for respondents.

*Diane L. Polscer* and *Michael I. Neil* on behalf of Federation of Defense and Corporate Counsel, amicus curiae.

*Bryan P. Harnetiaux, Gary N. Bloom,* and *George M. Ahrend* on behalf of Washington State Association for Justice Foundation, amicus curiae.

*Michael B. King* and *Justin P. Wade* on behalf of National Association of Mutual Insurance Companies, American

Insurance Association, and Property Casualty Insurers Association of America, amici curiae.

¶1 Fairhurst, J. — When an insured defendant believes its insurer is refusing to settle a plaintiff's claims in bad faith, the insured can negotiate an independent pretrial settlement with the plaintiff. These settlements typically involve a stipulated judgment against the insured, a covenant not to execute on that judgment against the insured, and an assignment to the plaintiff of the insured's bad faith claim against the insurer. This is referred to collectively as a covenant judgment. If the settlement amount is deemed reasonable by a trial court, it becomes the presumptive measure of damages in the later bad faith action. This case requires us to determine whether article I, section 21 of the Washington Constitution entitles an insurer to have that reasonableness determined by a jury. We hold it does not.

## I. BACKGROUND AND PROCEDURAL HISTORY

¶2 This case began inauspiciously over six years ago when James A. Bird returned home from work. He and his wife live on hillside, waterfront property in a house located downhill, away from the street. As Bird approached the house, a sudden burst of sewage erupted from the ground. The sewage went into his eyes, ears, nostrils, and mouth. In the shock and confusion, Bird fell to the ground, cracked his elbow, and began vomiting. He also developed migraines soon thereafter.

¶3 The sewage burst was caused by an employee of Best Plumbing Group LLC, who entered Bird's property without permission and cut a pressurized sewage pipe in three places. Bird's next door neighbor had contacted Best to repair a leaking sewer line. The cut sewage pipe extended about 70 feet uphill from the house to the city sewer and pumped wastewater from the house at several times throughout the day. The sewer pump cycled at the moment Bird passed the area cut by Best.

¶4 Best told Bird it would repair the line but failed to do so completely. Over the course of eight months, sewage continued to escape from the pipe with every pump cycle. Bird alleged the sewage flow caused dangerous hillside instability on his property as well as extensive damage to his residence in the form of toxic mold from moisture and sewage intrusion.

¶5 After Bird hired a number of experts to determine the extent of the damage and necessary repairs, the city of Seattle ordered the mitigation stopped because of concerns about the hillside's stability. Bird submitted a series of proposals to the city, escalating in cost, that were each rejected until the city ultimately approved a soldier-pile retaining wall. The estimated cost of the wall was $851,176.78. Allstate Insurance Company paid Bird $262,000 under his homeowner's insurance policy for home repairs and remediation.

¶6 Bird subsequently filed suit against Best, alleging trespass and negligence. Best's liability insurer, Farmers Insurance Exchange, appointed defense counsel without a reservation of rights. Allstate filed a separate subrogation claim against Best for the $262,000 payment to Bird, and the two cases were consolidated. The trial court eventually granted partial summary judgment to Bird on liability and proximate cause, leaving the issue of damages for trial.

¶7 Shortly before trial, Bird made a settlement demand for $2 million, the limits of Best's insurance policy with Farmers. The demand followed Bird's counsel's assertion that Best may be liable under the treble damages provision of the trespass statute, RCW 4.24.630. Farmers then made

a counter settlement offer of $350,000. Worried about potential exposure beyond the limits of his Farmers policy, Best's owner consulted an outside attorney with whom he had worked in the past. That attorney negotiated a settlement between Bird and Best that called for a $3.75 million stipulated judgment against Best. The settlement also included an assignment of Best's claims against Farmers and a covenant not to execute against Best.

¶8 After Farmers received notice of the settlement, Bird moved for a determination that the settlement was reasonable under RCW 4.22.060. The trial court granted Farmer's motion to intervene, motion for a continuance, and motion for discovery, but denied its motion for a jury trial. The reasonableness hearing was conducted over the course of four days and was fiercely contested, resulting in a trial court record, now on review, exceeding 3,000 pages. After evaluating the damages claims, the trial court trebled the amounts, then discounted by 25 percent based on a "trebling claim risk," and arrived at a total figure of $3,989,914.83. Clerk's Papers (CP) at 3446. The trial court therefore concluded the parties' $3.75 million settlement was reasonable.

¶9 Farmers appealed the trial court's denial of the request for a jury trial, as well as the reasonableness determination. The Court of Appeals affirmed the trial court, *Bird v. Best Plumbing Grp., LLC*, 161 Wn. App. 510, 260 P.3d 209 (2011), and denied a subsequent motion for reconsideration. We then granted Farmers' petition for review. *Bird v. Best Plumbing Grp., LLC*, 172 Wn.2d 1010, 259 P.3d 1109 (2011).

## II. ISSUES

¶10 A. Does an insurer have a constitutional right to a jury trial on the reasonableness of a covenant judgment between an insured defendant and a plaintiff under RCW 4.22.060?

¶11 B. Did the trial court abuse its discretion in determining the covenant judgment was reasonable?

## III. ANALYSIS

¶12 On the primary issue, we hold an insurer does not have a constitutional right to a jury trial on the reasonableness of a covenant judgment under RCW 4.22.060. We also hold the trial court did not abuse its discretion in determining the covenant judgment was reasonable. We affirm the trial court and Court of Appeals.

A. Farmers Does Not Have a Constitutional Right to a Jury Trial on the Reasonableness of a Covenant Judgment

¶13 To resolve the first issue, we need a preliminary understanding of the nature of covenant judgments. We then analyze Farmers' argument that the reasonableness of a covenant judgment must be determined by a jury trial, along with its brief due process contention in light of our constitutional jurisprudence.

1. *Covenant judgments are determined reasonable under RCW 4.22.060*

¶14 We have recognized an insured defendant may independently negotiate a pretrial settlement if the defendant's liability insurer refuses in bad faith to settle the plaintiff's claims. *Besel v. Viking Ins. Co. of Wis.*, 146 Wn.2d 730, 736, 49 P.3d 887 (2002). This protection for the insured augments another well established rule: "[I]f an insurer acts in bad faith by refusing to effect a settlement for a small sum, an insured can recover from the insurer the amount of a judgment rendered against the insured, even if the judgment exceeds contractual policy limits." *Id.* at 735.

¶15 As happened in this case, the typical settlement agreement involves three features: (1) a stipulated or consent judgment between the plaintiff and insured, (2) a

plaintiff's covenant not to execute on that judgment against the insured, and (3) an assignment to the plaintiff of the insured's coverage and bad faith claims against the insurer. *Id.* at 736-38; THOMAS V. HARRIS, WASHINGTON INSURANCE LAW § 10.02, at 10-3 (3d ed. 2010). This type of settlement agreement, often referred to as a covenant judgment, "does not release a tortfeasor from liability; it is simply 'an agreement to seek recovery only from a specific asset—the proceeds of the insurance policy and the rights owed by the insurer to the insured.'" *Besel*, 146 Wn.2d at 737 (quoting *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 399, 823 P.2d 499 (1992)).

¶16 If the amount of the covenant judgment is deemed reasonable by a trial court, it becomes the presumptive measure of damages in a later bad faith action against the insurer. *Id.* at 738. The insurer still must be found liable in the bad faith action and may rebut the presumptive measure by showing the settlement was the product of fraud or collusion. *Mut. of Enumclaw Ins. Co. v. T&G Constr., Inc.*, 165 Wn.2d 255, 264, 199 P.3d 376 (2008).

¶17 As a policy matter, we have carefully considered and endorsed the propriety of this process:

> An insurer refusing to defend exposes its insured to business failure and bankruptcy. An insurer faced with claims exceeding its policy limits should not be permitted to do nothing in the hope that the insured will go out of business and the claims simply go away. To limit an insurer's liability to its indemnity limits would only reward the insurer for failing to act in good faith toward its insured. We therefore hold that when an insurer wrongfully refuses to defend, it has voluntarily forfeited its ability to protect itself against an unfavorable settlement, unless the settlement is the product of fraud or collusion. To hold otherwise would provide an incentive to an insurer to breach its policy.

*Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d 751, 765-66, 58 P.3d 276 (2002) (citation omitted). We have equally acknowledged the danger for collusive or fraudu-

lent settlements but concluded the reasonableness determination "protect[s] insurers from excessive judgments especially where . . . the insurer has notice of the reasonableness hearing and has an opportunity to argue against the settlement's reasonableness." *Besel*, 146 Wn.2d at 739.

¶18 There are nine factors the trial court must consider to determine if a settlement is reasonable:

> (1) [T]he releasing party's damages; (2) the merits of the releasing party's liability theory; (3) the merits of the released party's defense theory; (4) the released party's relative fault; (5) the risks and expenses of continued litigation; (6) the released party's ability to pay; (7) any evidence of bad faith, collusion, or fraud; (8) the extent of the releasing party's investigation and preparation; and (9) the interests of the parties not being released.

*Mut. of Enumclaw*, 165 Wn.2d at 264. "No one factor controls and the trial court has the discretion to weigh each case individually." *Chaussee v. Md. Cas. Co.*, 60 Wn. App. 504, 512, 803 P.2d 1339, 812 P.2d 487 (1991). The settling parties have the burden to prove reasonableness. *Id.* at 510.

¶19 In this case, a hearing on the reasonableness of the covenant judgment was held pursuant to RCW 4.22.060. That statute was enacted as part of the tort reform act in 1981 to provide a means to allocate liability among joint tortfeasors. Originally under the statute, a trial court would determine whether a settlement amount between a tort victim and fewer than all tortfeasors was reasonable. *See Glover v. Tacoma Gen. Hosp.*, 98 Wn.2d 708, 716, 658 P.2d 1230 (1983), *abrogated by Crown Controls, Inc. v. Smiley*, 110 Wn.2d 695, 756 P.2d 717 (1988). If so, a nonsettling tortfeasor could offset that exact amount from a damages award at trial. *Id.*

¶20 Farmers claims RCW 4.22.060 should not apply outside of the contribution context. However, numerous Washington court decisions have since extended its application from settlements in the contribution setting to those

between an insured defendant and a plaintiff who is contemplating a suit against the insurer for bad faith. *See, e.g.,* *Heights at Issaquah Ridge Owners Ass'n v. Derus Wakefield I, LLC*, 145 Wn. App. 698, 187 P.3d 306 (2008), *review denied*, 165 Wn.2d 1029, 203 P.3d 378 (2009); *Werlinger v. Warner*, 126 Wn. App. 342, 109 P.3d 22 (2005); *Howard v. Royal Specialty Underwriting, Inc.*, 121 Wn. App. 372, 89 P.3d 265 (2004); 16 DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE: TORT LAW AND PRACTICE § 12.43, at 369 n.7 (3d ed. 2006) (collecting cases). The statute itself implicates reasonableness hearings where settlements involve "[a] release, covenant not to sue, covenant not to enforce judgment, or similar agreement." RCW 4.22.060(1). Covenant judgments fit squarely within this language.

¶21 While this court has not explicitly applied RCW 4.22.060 in the insurance context, we unambiguously approved of the use of reasonableness hearings to evaluate covenant judgments in *Besel*, 146 Wn.2d at 738-39. We also did so in *Mutual of Enumclaw*, 165 Wn.2d at 264. In both cases, we adopted the identical substantive standards for determining reasonableness in previous RCW 4.22.060 contribution cases. We take this opportunity to explicitly approve the application of RCW 4.22.060 to reasonableness hearings involving covenant judgments. Our earlier opinions have done so in essence, and subsequent cases have done so in practice.

2. *Article I, section 21 does not entitle Farmers to a jury determination of reasonableness*

¶22 Farmers' primary claim is that it is entitled under our constitution to have the reasonableness determination decided by a jury during either the RCW 4.22.060 reasonableness hearing or the subsequent bad faith action. We hold there is no right to a jury determination of reasonableness under RCW 4.22.060 because that statute creates an equitable proceeding. We also affirm that a reasonable covenant judgment establishes the presumptive measure of

damages against the insured in a subsequent bad faith action; there is no constitutional right to have that amount redecided by a jury.

¶23 Our analysis starts with the statute in question. RCW 4.22.060(1) states in relevant part, "[P]rior to entering into a release, covenant not to sue, covenant not to enforce judgment, or similar agreement with a claimant" a party must give five days of notice to all other parties and the court. It further provides, "A hearing shall be held on the issue of the reasonableness of the amount to be paid with all parties afforded an opportunity to present evidence. A determination *by the court* that the amount to be paid is reasonable must be secured." *Id.* (emphasis added). The plain language of the statute establishes the determination must be made by the trial judge, not a jury.

¶24 Legislative acts are accorded a "heavy presumption of constitutionality," and the challenging party bears the burden of proving a statute is unconstitutional beyond all reasonable doubt. *Aetna Life Ins. Co. v. Wash. Life & Disability Ins. Guar. Ass'n*, 83 Wn.2d 523, 528, 520 P.2d 162 (1974).

¶25 Our constitution declares, "The right of trial by jury shall remain inviolate." CONST. art. I, § 21. Only our state jurisprudence applies, as the Seventh Amendment to the United States Constitution does not apply to civil cases in state courts. *Minneapolis & St. Louis R.R. v. Bombolis*, 241 U.S. 211, 217, 36 S. Ct. 595, 60 L. Ed. 961 (1916); *Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 644, 771 P.2d 711, 780 P.2d 260 (1989).

¶26 We have long interpreted article I, section 21 as guaranteeing those rights to trial by jury that existed at the time of the constitution's adoption in 1889. *Brown v. Safeway Stores, Inc.*, 94 Wn.2d 359, 365, 617 P.2d 704 (1980). Under this historical approach, "the court examines (1) whether the cause of action is one to which the right to a jury trial applied in 1889, and (2) the scope of the right to a jury trial." *Nielson v. Spanaway Gen. Med. Clinic, Inc.*,

135 Wn.2d 255, 266, 956 P.2d 312 (1998). It is well established that the right to a jury trial exists where a case is purely legal in nature but does not exist where a case is purely equitable. *Brown*, 94 Wn.2d at 365. There is also no right to a jury trial "in statutorily created actions without common law analogues." *State v. State Credit Ass'n*, 33 Wn. App. 617, 621, 657 P.2d 327 (1983) (citing *State Bd. of Med. Exam'rs v. Macy*, 92 Wash. 614, 159 P. 801 (1916)).

 ¶27 We have already held reasonableness determinations under RCW 4.22.060 are equitable proceedings without a jury trial right. *Schmidt v. Cornerstone Invs., Inc.*, 115 Wn.2d 148, 159-61, 795 P.2d 1143 (1990). In *Schmidt*, real estate investors sued a number of defendants, including an appraiser, when their investment failed. *Id.* at 155-56. After settling with the appraiser for $50,000, the investors sought a reasonableness determination under RCW 4.22.060. *Id.* at 156. The trial court, however, found that the reasonable settlement amount was $150,000 and that figure became the amount that damage awards against the nonsettling defendants were offset by. *Id.*

¶28 The precise issue on appeal was "whether RCW 4.22.060 is unconstitutional because it allows the trial court to reduce the total sum of an injured party's damage award by an amount determined by the trial court rather than by a jury." *Id.* at 159. We declared the statute constitutional, holding that "the right to jury trial does not extend to procedures in equity, such as whether the amount of a proposed settlement is reasonable. Such questions are properly within the province of the trial court to decide." *Id.* at 161. Accordingly, the plaintiff investors could not argue the initial reasonableness determination to a jury, or re-argue the reasonableness in the subsequent tort case. Farmers attempts to distinguish that holding from the present case because the settlement agreement presented in *Schmidt* arose in the contribution context, rather than the insurance context. That distinction makes no difference. Nothing in

our opinion limits that holding to cases involving joint tortfeasors.

¶29 To the contrary, we unambiguously concluded a procedure to determine the reasonableness of a proposed settlement is equitable in nature. *Id.* Farmers offers no persuasive reason to conclude a settlement involving a covenant judgment changes this characterization. In both settings, the determination directly affects the amount of damages recoverable in subsequent tort cases. In the contribution setting, the settlement figure is subtracted from the total damage amount; and in the insurance setting, the presumptive amount is added to any other damages found by the jury. We have even reasoned the similarities between the two scenarios require identical standards for determining reasonableness. There is " 'little difference between a determination of reasonableness in the context of the contribution statute and [a covenant judgment]. In both settings, similar concerns exist regarding the impact of a settlement on other parties and the risk of fraud or collusion.' " *Besel*, 146 Wn.2d at 738 (alteration in original) (quoting *Chaussee*, 60 Wn. App. at 512). There is no material difference between the two settings.

¶30 Further, subsequent cases have affirmed the procedure whereby reasonableness in the insurance setting is determined by a judge. *See Mut. of Enumclaw*, 165 Wn.2d at 267 (when a settlement is "judged reasonable *by a judge*" it appropriately sets the "presumptive damage award for purposes of coverage" (emphasis added)); *Besel*, 146 Wn.2d at 739 (explicitly approving the *trial court's* determination of a reasonable covenant judgment between an insured defendant and a plaintiff). Rather than accommodating a forced distinction from *Schmidt*, we find that case law controls on this issue and hold RCW 4.22.060 creates an equitable procedure not only in the contribution setting, but also for covenant judgments. No jury trial right attaches.

¶31 Farmers additionally claims the judge's determination unconstitutionally sets the presumptive amount of

damages in a subsequent bad faith tort action. This argument is premised on an overly broad interpretation of *Sofie*, 112 Wn.2d at 669.

¶32 *Sofie*'s holding is inapplicable in this instance. In that case, we held a statutory provision that limited the amount of noneconomic damages a plaintiff could recover in personal injury and wrongful death actions was unconstitutional because it interfered with the jury's historical function of determining factual damages issues. *Id.* at 638. The facts had nothing to do with reasonableness hearings or covenant judgments. Farmers reads *Sofie* as standing for the universal proposition that the measure of damages in any tort claim always presents a question of fact to be decided by the jury. *See* Farmers' Suppl. Br. at 9. Our case law does not bear this out.

¶33 We have held to the contrary not only in *Schmidt* but also in *Nielson*. Indeed, we note *Schmidt* was decided one year after *Sofie*, and without reference thereto. *Nielson* involved two malpractice claims—one in federal court against the United States, and the other in state court against a private clinic and physician. 135 Wn.2d at 259. The action in federal court was tried first without a jury, as required by 28 U.S.C. § 2402, and the court found damages totaling over $3 million. *Nielson*, 135 Wn.2d at 259. The superior court in the remaining state case then ruled the plaintiffs were collaterally estopped from relitigating the issue of the amount of damages. *Id.* at 261. Like Farmers, the plaintiffs in *Nielson* argued that *Sofie* afforded them a constitutional right to present the damage issue to a jury. *Nielson*, 135 Wn.2d at 265. We rejected such a broad interpretation, holding the plaintiffs had no such right to a jury trial. *Id.* at 269. We reasoned, "Although the factual issue of damages is a jury question in Washington, there must be an issue of fact to resolve in order for that right to arise. Where the issue has been resolved in a prior proceeding, no factfinding duty remains for a jury on that issue." *Id.*

¶34 The facts in this case are sufficiently analogous to those in *Schmidt* and *Nielson*. In each case, the amount of

damages is presumptively set, reduced, or precluded, respectively, by a prior proceeding in which there is no right to a jury trial. This is entirely distinguishable from our analysis in *Sofie*, where the statute in question "directly change[d] the outcome of a jury determination" and "operate[d] by taking a jury's *finding of fact* and altering it to conform to a predetermined formula." 112 Wn.2d at 653 (emphasis added). The statute there was unconstitutional because "Washington has consistently looked to the jury to determine damages *as a factual issue*." *Id.* at 648 (emphasis added). Here, there is no factual determination to be made on damages in the later bad faith claim, at least not with respect to the covenant judgment. Farmers would have us declare a judge's reasonableness determination cannot affect what happens in a later damages action. That would be error because, as we have said, "If a reasonable and good faith settlement amount of a covenant judgment does not measure an insured's harm, our requirement that such settlements be reasonable is meaningless." *Besel*, 146 Wn.2d at 739; *see also Howard*, 121 Wn. App. at 379 (the fact that a reasonableness determination sets the presumptive measure of an insured's harm is not a basis to conclude the procedure is not appropriate).[1]

---

[1] The dissent, like Farmers, interprets *Sofie* far too broadly and mistakenly discounts the effect of preclusion principles confirmed by *Nielson*. The dissent relies on "sweeping language," dissent at 784, from *Sofie* that provides, in part, that there is a constitutional right to have a jury "determine the amount of damages in a civil case." 112 Wn.2d at 656. But this is incomplete. The more precise statement from that case is that the right attaches where the jury must "determine damages *as a factual issue*." *Id.* at 648 (emphasis added); *see also id.* at 647 (jury right to determination of damages has been historically implicated " 'in cases where the amount of damages was *uncertain*' " (emphasis added) (internal quotation marks omitted) (quoting *Dimick v. Schiedt*, 293 U.S. 474, 480, 55 S. Ct. 296, 79 L. Ed. 603 (1935))); 645 (" '[W]here the amount of damages *is not fixed*, agreed upon, or in some way liquidated, a jury must be called, unless expressly waived.' " (emphasis added) (quoting *Baker v. Prewitt*, 3 Wash. Terr. 595, 597-98, 19 P. 149 (1888))). The statutory limit in *Sofie* was unconstitutional because it supplanted the jury's fact finding role concerning damages. That is not the case here. The reasonableness hearing is an equitable procedure to which no jury right attaches. The presumption of damages that arises from that equitable hearing measures the harm suffered by the insured and eliminates any need for a factual determination of damages in the later bad faith claim. This procedure

¶35 Determining the reasonableness of a covenant judgment under RCW 4.22.060 is an equitable proceeding to which no jury trial right is afforded. Its consequences are not meaningless but rather serve to reflect the presumptive measure of harm to an insured in a subsequent bad faith claim. Washington law has shaped and approved this process as a settled and appropriate means of balancing the multiple interests of plaintiffs, insureds, and insurers. Farmers does not have a right under article I, section 21 of our constitution to a jury determination of reasonableness either at the reasonableness hearing or the subsequent bad faith action. We therefore affirm the trial court and Court of Appeals on this issue.

3. *The reasonableness hearing does not violate due process*

¶36 Farmers did not make a due process argument to the trial court. At the Court of Appeals, Farmers argued its due process rights were violated based entirely on the presumption it had a right to a jury trial. Because there is no right to a jury in an equitable reasonableness hearing, the Court of Appeals' disposal of that argument was correct. *See*

does not "take[ ] the determination of damages in a bad faith claim out of the hands of the jury," dissent at 782, because, unlike in *Sofie*, that determination was never in a jury's hands to begin with. We confirmed these preclusion principles in *Nielson*, 135 Wn.2d at 266-69, and the dissent's attempt to distinguish that case is unpersuasive. The fact that Farmers intervened in the RCW 4.22.060 reasonableness hearing rather than initiating a prior suit in federal court, like the plaintiffs in *Nielson*, has no relevance to the application of collateral estoppel. In both cases, the issue of damages has been resolved in a prior proceeding and no fact finding duty for the jury remains on that issue.

The dissent also makes a claim that based on our reasoning, the legislature could simply create an equitable proceeding in which a judge would determine the issue of damages in every case. *See* dissent at 785. That is incorrect. The reasonableness determination in this context is equitable because of its nature, not simply because the procedure is provided for by statute. The hearing under RCW 4.22.060 centers on the question of whether the covenant judgment amount is reasonable. In evaluating the reasonableness, the court considers a myriad of factors like, for example, the merits of the parties' liability and defense theories and the interests of parties not being released. *See Besel*, 146 Wn.2d at 738. As we said in *Schmidt*, 115 Wn.2d at 161, this postsettlement determination of reasonableness is equitable in nature and presents a much different inquiry than a determination of damages in the underlying claim.

*Elsom v. Tefft*, 140 Wash. 586, 592, 250 P. 346 (1926) (an equitable proceeding without a jury does not violate due process). Farmers now contends in its petition for review that due process was violated because the reasonableness hearing created an irrebuttable presumption of damages.

¶37 Due process is satisfied by notice and an opportunity to intervene in the underlying action. *Fisher v. Allstate Ins. Co.*, 136 Wn.2d 240, 251, 961 P.2d 350 (1998). There is no presumption of damages at the reasonableness hearing. The burden is on the settling parties to prove reasonableness. *Chaussee*, 60 Wn. App. at 510. Farmers was afforded notice, intervened, and participated in a lengthy and highly contested hearing on the issue of the reasonableness. We have considered this process and concluded it adequately protects the interest of insurers against excessive judgments. *Besel*, 146 Wn.2d at 739. Further, to the extent the reasonableness hearing sets the presumptive damages in a subsequent bad faith action, that presumption can be overcome upon a showing of fraud or collusion. *Id.* at 738. And in any event, due process is not abridged by the application of preclusion principles. *See Fisher*, 136 Wn.2d at 251; *see also Nielson*, 135 Wn.2d at 261.

¶38 Accordingly, Farmers' new due process contention is without merit.

B. The Trial Court Did Not Abuse Its Discretion by Determining the Covenant Judgment Was Reasonable

¶39 Farmers contends the trial court misapplied the treble damages provision of the trespass statute, RCW 4.24.630, and therefore erred in finding the covenant judgment reasonable. We affirm because the trial court did not abuse its discretion in evaluating the viability of a claim for treble damages.

¶40 Trial courts retain broad discretion in determining reasonableness, and we review under an abuse of discretion standard. *See Mut. of Enumclaw*, 165 Wn.2d at 261. "Abuse of discretion" means the "decision is manifestly

unreasonable or is based on untenable grounds or untenable reasons." *Water's Edge Homeowners Ass'n v. Water's Edge Assocs.*, 152 Wn. App. 572, 584, 216 P.3d 1110 (2009) (citing *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006)). Inquiries under RCW 4.22.060 "necessarily involve[ ] factual determinations which will not be disturbed on appeal when supported by substantial evidence." *Schmidt*, 115 Wn.2d at 158; *Water's Edge Homeowners Ass'n*, 152 Wn. App. at 584.

¶41 An evaluation of Bird's claims under RCW 4.24.630 was a necessary part of the trial court's determination. That statute provides a person who enters the land of another and "wrongfully causes waste or injury to the land" is liable to the landowner for treble damages. A person acts "wrongfully" under this provision if he or she "intentionally and unreasonably *commits the act* or acts while knowing, or having reason to know, that he or she lacks authorization to so act." *Id.* (emphasis added). Farmers argues this statute requires an intent to cause harm, not simply an intent to act. Pet. for Review at 16.

¶42 We need not consider Farmers' argument on the merits. It is a long-settled rule that we decide only those questions that "are necessary for a determination of the case presented for consideration, and will not render decisions in advance of such necessity, particularly when the question . . . involves the construction of a statute." *Johnson v. Morris*, 87 Wn.2d 922, 931, 557 P.2d 1299 (1976); *Ajax v. Gregory*, 177 Wash. 465, 475, 32 P.2d 560 (1934). Even if we interpreted the treble damages provision as Farmers wished, it would not change the outcome of this case. The precise question before us is whether the trial court abused its discretion in determining the covenant judgment was reasonable. The applicability of treble damages was a relevant consideration but the trial court was not required to, and did not, decide on the statute's ultimate construction. As the trial court acknowledged, it needed only to "address the viability of the treble damages claim based on

what was known to the parties at the time of settlement." CP at 3442.

¶43 Our review of the record demonstrates the trial court properly understood the issue and carefully considered Farmers' argument. In its order on reasonableness hearing, the trial court explained:

> The settling parties had reason to conclude that the Defendant was exposed under the treble damages statute because of a plethora of facts that could lead a judge to find as a matter of law that the claim was viable and which could cause a jury to find liability. Uncontradicted evidence at trial would show the first two elements of the claim: 1) Defendant's employee going onto Bird's property and 2) causing waste or injury to the land or improvements. The facts would support a finding that the acts of cutting and attempting repair of the pipe were wrongful as that term is defined in the statute. The defense theory that no intent to harm had been shown might have merit with a jury sympathetic to [Best]; however, the Defendant ran the risk that the sympathy factor would run against him and in favor of Mr. Bird.
>
> Therefore, the inclusion of some calculation for damages is reasonable.

CP at 3443. Although it was skeptical of Farmers' legal argument, the trial court nevertheless reduced the total reasonable damages amount by 25 percent to reflect the risk in Bird's treble damages claim. CP at 3446. The above analysis and corresponding modification of damages do not amount to an abuse of discretion. We therefore affirm.

## IV. CONCLUSION

¶44 Farmers is not entitled to a jury determination of reasonableness either in the RCW 4.22.060 reasonableness hearing or the subsequent bad faith action. Furthermore, the trial court did not abuse its discretion in finding the

covenant judgment reasonable. Accordingly, the trial court and Court of Appeals are hereby affirmed.

C. JOHNSON, CHAMBERS, OWENS, STEPHENS, and GONZÁLEZ, JJ., concur.

¶45 WIGGINS, J. (dissenting) — Farmers Insurance Exchange challenges the reasonableness hearing procedure in the covenant judgment between its insured, Best Plumbing Group LLC, and the party injured by Best Plumbing, James Bird. Because the stipulated damages, if they are reasonable, will become the presumptive measure of damages in a subsequent bad faith claim, Farmers argues that it has been deprived of the right to a jury determination of damages.

¶46 I cannot join the majority's holding that article I, section 21 of the Washington Constitution does not entitle an insurer to have that reasonableness determined by a jury in an action for the insurer's bad faith. Majority at 761. We have held that there is no right to have a jury determine reasonableness in the context of contribution among joint tortfeasors. An action for contribution is an equitable determination and the constitution does not guarantee jury trials in equity. But an action for insurance bad faith is a legal action to which our constitution unequivocally guarantees a right to trial by jury. I dissent from the majority's violation of this cherished right.

*A. The Reason for Reasonableness Hearings*

¶47 The reasonableness hearing was developed as part of the tort reform efforts of the 1970s and 1980s in Washington. Prior to 1973, the doctrine of contributory negligence barred an injured party from tort recovery if his or her own negligence contributed to the injury. *Seattle First Nat'l Bank v. Shoreline Concrete Co.*, 91 Wn.2d 230, 236, 588 P.2d 1308 (1978), *superseded by statute on other*

*grounds as stated in Kottler v. State*, 136 Wn.2d 437, 443, 963 P.2d 834 (1998). But if the injured person was not guilty of contributory negligence, any indivisible injury caused jointly by more than one tortfeasor created joint and several liability: each joint or concurrent tortfeasor was liable for the entire harm. *Id.* This joint and several liability meant that a fault-free injured party could seek full recovery from one or all of multiple tortfeasors. *Id.* And if the injured person collected all of the damages from one of several tortfeasors, that hapless tortfeasor could not sue the other tortfeasors for contribution of their fair share of the damages. *Wenatchee Wenoka Growers Ass'n v. Krack Corp.*, 89 Wn.2d 847, 849-50, 576 P.2d 388 (1978).

¶48 In 1973, the legislature replaced common law contributory negligence with statutory comparative negligence. LAWS OF 1973, ch. 138, § 1; *Wenatchee*, 89 Wn.2d at 849. Under comparative negligence, an injured party's negligence is not a complete bar to recovery, but diminishes recovery in proportion to the percentage of negligence attributed to the injured party. *Seattle First*, 91 Wn.2d at 236; *Godfrey v. State*, 84 Wn.2d 959, 965, 530 P.2d 630 (1975). Joint and concurrent tortfeasors remained jointly and severally liable, *Seattle First*, 91 Wn.2d at 237, and contribution among tortfeasors remained unavailable, *Wenatchee*, 89 Wn.2d at 854.

¶49 In 1981, the legislature created the right of contribution among jointly and severally liable tortfeasors. LAWS OF 1981, ch. 27, §§ 11, 12. The right of contribution promotes equitable distribution of the responsibility to pay among these tortfeasors. *Wenatchee*, 89 Wn.2d at 850. But the right of contribution also requires consideration of the effect of separate settlement with individual defendants. The legislature addressed this issue with the reasonableness hearing procedure. LAWS OF 1981, ch. 27, § 14.

¶50 The reasonableness hearing procedure both promoted settlements and protected the nonsettling defendants. SENATE JOURNAL, 47th Leg., Reg. Sess. at 636-37

(Wash. 1981). The procedures promoted settlements by releasing the individually settling defendant from any additional liability. LAWS OF 1981, ch. 27, § 14. The procedures protected nonsettling defendants from a greater-than-equitable share of liability by reducing the plaintiff's recovery by the amount of a reasonable settlement. *Id.* The reasonableness of the settlement would be determined by the courts in a reasonableness hearing. *Id.* The procedures also protected nonsettling defendants from collusion between plaintiffs and settling defendants by providing nonsettling defendants with notice of the terms of the settlement and an opportunity to be heard at the reasonableness hearing. *Id.*

¶51 In this equitable context of contribution among joint tortfeasors, the trial court made the reasonableness determination and the parties had no right to a jury for the reasonableness hearing. RCW 4.22.060(1); *Schmidt v. Cornerstone Invs., Inc.*, 115 Wn.2d 148, 795 P.2d 1143 (1990). In *Schmidt*, the plaintiffs settled with one defendant for $50,000, but after a reasonableness hearing under RCW 4.22.060, the trial court found that the reasonable settlement amount was $150,000. 115 Wn.2d at 156. After a jury trial against the remaining defendants, the trial court reduced the total damage award by the $150,000 reasonableness figure. Because the $150,000 reasonableness figure was determined by the trial court, not the jury, the Schmidts argued on appeal that RCW 4.22.060 deprived them of their constitutional right to a jury trial. *Id.* at 159. We held that that the jury trial right does not extend to procedures in equity, like the reasonableness determination under RCW 4.22.060. *Id.* at 161.

¶52 In 1986, the legislature rendered reasonableness determinations largely unnecessary when it significantly limited joint and several liability, providing that the trier of fact, the jury (or the judge in cases tried without a jury), would determine the percentage of fault attributable to

every entity responsible for the injured party's damages.[2] LAWS OF 1986, ch. 305, § 401. The jury now assigns fault to each person or entity who caused the harm to the plaintiff, and if the jury finds that the injured party was partly at fault, the court enters judgment against each nonsettling defendant according to that defendant's proportionate share of the fault. RCW 4.22.070. If the injured party is fault free, the court enters judgment jointly and severally against all nonsettling defendants for the total of their respective proportionate shares of fault. *Id.* As a result, the reasonable value of a prior settlement is no longer deducted from the ultimate judgment because the proportionate share of damages assigned to the settling defendant is no longer included in the judgment. *Washburn v. Beatt Equip. Co.*, 120 Wn.2d 246, 294-95, 840 P.2d 860 (1992).

## B. Reasonableness Hearings and Covenant Judgments

¶53 Although the 1986 tort reforms rendered reasonableness hearings largely irrelevant for contribution among joint tortfeasors, we have applied reasonableness determinations to covenant judgments. As explained by the majority, a covenant judgment results when an insured defendant settles with the injured plaintiff and assigns its bad claim against the insurer in return for the plaintiff's covenant not to execute against the insured. *Besel v. Viking Ins. Co. of Wis.*, 146 Wn.2d 730, 736, 49 P.3d 887 (2002).

¶54 In an insurance bad faith action, an insurer who acts in bad faith can be liable for the entire amount of a judgment entered against its insured even though that judgment exceeds policy limits. *Evans v. Cont'l Cas. Co.*, 40 Wn.2d 614, 627-28, 245 P.2d 470 (1952). Even if no judg-

---

[2] The reasonableness determination under RCW 4.22.060 retains its original relevance in terms of contribution between joint tortfeasors under the exceptions listed in RCW 4.22.070(3), where true joint and several liability applies. These exceptions apply only in very specific causes of action: (a) hazardous wastes or substances or solid waste disposal sites, (b) tortious interference with contracts or business relations, and (c) manufacture or marketing of fungible products in generic form. RCW 4.22.070(3)(a)-(b). None of these is relevant here.

ment is entered, we have held that an insured can recover based on settlement of a claim that the insurer refused in bad faith to settle, as long as the claim was settled in good faith and the settlement was reasonable. *Id.* at 628. We have explained under *Evans*, that the insured may recover the full amount of a reasonable settlement even if that amount exceeds policy limits. *Murray v. Aetna Cas. & Sur. Co.*, 61 Wn.2d 618, 620-21, 379 P.2d 731 (1963).

¶55 The Court of Appeals adapted the statutory reasonableness determination to evaluating covenant judgment settlements in *Chaussee v. Maryland Casualty Co.*, 60 Wn. App. 504, 509-10, 803 P.2d 1339, 812 P.2d 487 (1991). Before *Chaussee*, no Washington court had defined what constitutes a reasonable settlement in the insurance bad faith setting. *Id.* at 510. The *Chaussee* court adopted the factors set out by this court in *Glover v. Tacoma General Hospital*, 98 Wn.2d 708, 717, 658 P.2d 1230 (1983), for a reasonableness hearing under RCW 4.22.060.[3] These factors would protect the insurer from fraud and collusion between the insured defendant and injured plaintiff in the covenant judgment context just as they protected nonsettling, joint-tortfeasor defendants in the contribution context. *Id.* And just as in the contribution context, the reasonableness determination in the covenant judgment context would be made by the court. *Id.*

¶56 We expanded on the *Chaussee* court's adoption of the reasonableness factors from the contribution context in *Besel* and its progeny. *Besel*, 146 Wn.2d 730; *see, e.g., Mut. of Enumclaw Ins. Co. v. Dan Paulson Constr., Inc.*, 161 Wn.2d 903, 169 P.3d 1 (2007). We not only endorsed the RCW 4.22.060 reasonableness hearing as the vehicle for judicial

---

[3] The reasonableness factors adopted in *Chaussee* are (1) the releasing person's damages; (2) the merits of the releasing person's liability theory; (3) the merits of the released person's defense theory; (4) the released person's relative faults; (5) the risks and expenses of continued litigation; (6) the released person's ability to pay; (7) any evidence of bad faith, collusion, or fraud; (8) the extent of the releasing person's investigation and preparation of the case; and (9) the interests of the parties not being released. 60 Wn. App. at 512.

determination of reasonableness in the covenant judgment context, we went a step further: we held that the amount of the settlement between injured plaintiff and insured defendant, judicially determined to have been reasonable, was the presumptive measure of damages in the subsequent bad faith action. *Besel*, 146 Wn.2d at 738-39. This presumption may be rebutted only by a showing of fraud or collusion. *See, e.g.*, *Mut. of Enumclaw*, 161 Wn.2d at 925. Aside from the inherent difficulty in proving fraud or collusion, fraud and collusion are already included in the factors the trial court considers in making the reasonableness determination. *Besel*, 146 Wn.2d at 738.

¶57 These considerations render the presumption of reasonableness practically irrebuttable. As a result, the insurer like Farmers, who was not a party to the settlement and whose conduct did not cause the injuries on which the settlement is based, is bound by an irrebuttable presumption of damages based on a trial. court's reasonableness determination. This type of irrebuttable presumption of damages effectively takes the determination of damages in a bad faith claim out of the hands of the jury. And determining the amount of damages is an important constitutional role for the jury. *Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 646, 771 P.2d 711, 780 P.2d 260 (1989).

*C. The Constitutional Right to a Jury Determination of Damages*

¶58 We have not previously considered whether an insurer has a right to a jury determination of the reasonableness of a covenant judgment, neither in *Besel* nor its progeny. Our focus in *Besel* was whether damages in the bad faith action after a covenant judgment could exceed policy limits and whether a victim's covenant not to execute on the judgment against the insured defendant precluded a finding of harm in a subsequent bad faith claim against the insurer. 146 Wn.2d at 735-36. Nor were we asked in later

cases to address the constitutionality of this use of the reasonableness determination.[4]

¶59 In *Schmidt*, we considered the constitutionality of the reasonableness determination under RCW 4.22.060, which, as discussed above, is an equitable determination of the right to contribution among joint tortfeasors.[5] By contrast, when the reasonableness determination is applied to a covenant judgment, it becomes an all but irrebuttable measure of damages in an insurance bad faith action.

¶60 Turning then to the Washington Constitution, article I, section 21 provides that "[t]he right of trial by jury shall remain inviolate." This provision is the sole protection of the right to a jury trial in a civil case in Washington. *See Sofie*, 112 Wn.2d at 644 (noting that the Seventh Amendment to the United States Constitution does not apply to the states).

¶61 We have held unequivocally that article I, section 21 protects the jury's role of determining damages when we examined another aspect of the 1986 tort reform legislation: a cap on noneconomic damages. *Id.* at 648. In *Sofie*, plaintiffs argued that RCW 4.56.250 violated their constitutional right to jury trial by requiring that the jury's determination of noneconomic damages of $1,345,883.00 be reduced to $316,377.45. *Id.* at 638, 640. In interpreting article I, section 21, we looked to the right as it existed at the time of the constitution's adoption in 1889 to determine both the scope of the right and the causes of action to which it applies. *Id.* at 645. We found clear evidence that the jury's

---

[4] *See Mut. of Enumclaw*, 161 Wn.2d 903 (defining the duty of good faith where an insurer defends its insured under a reservation of rights; holding that the same criteria for reasonableness of the covenant judgment and presumptive measure of damages apply in a subsequent bad faith action); *Mut. of Enumclaw Ins. Co. v. T&G Constr., Inc.*, 165 Wn.2d 255, 199 P.3d 376 (2008) (holding that affirmative defenses rejected in the underlying liability case could not be relitigated in a subsequent coverage action).

[5] Although *Schmidt* was decided in 1990, the underlying lawsuit was brought in 1985. 115 Wn.2d at 155-56. The 1986 tort reform amendments applied to actions filed on or after August 1, 1986. LAWS OF 1986, ch. 305, § 910. Thus, *Schmidt* was decided under the 1981 rules for joint and severable liability.

fact-finding function included the determination of damages. *Id.* at 645-46 (citing, *e.g.*, *Baker v. Prewitt*, 3 Wash. Terr. 595, 19 P. 149 (1888); *Dacres v. Oregon Ry. & Navigation*, 1 Wash. 525, 20 P. 601 (1889)). This evidence led us to conclude that article I, section 21 guarantees that the jury determines damages. *Id.* at 646.

¶62 In evaluating the causes of action to which this right applies, we rejected the argument that the right to jury trial protected only those theories of recovery that were accepted in 1889. *Id.* at 648-49. Such an analysis, being frozen in time, would make little sense because it would diminish the right to a jury over time. *Id.* Rather, a more flexible historical approach better achieves the intent of the framers. *Id.* at 649. Ultimately, we were guided by the plain language of article I, section 21: "The right of trial by jury shall remain inviolate." *Id.* at 656. We held:

> Applied to the right to trial by jury, this language indicates that the right must remain the essential component of our legal system that it has always been. For such a right to remain inviolate, it must not diminish over time and must be protected from all assaults to its essential guaranties. In Washington, those guaranties include allowing the jury to determine the amount of damages in a civil case.

*Id.*

¶63 This sweeping language compels the conclusion that the right to jury determination of damages that we recognized in *Sofie* applies in this case as well. The nearly irrebuttable presumptive measure of damages removes the damages determination from the jury's hands as surely as did the damages cap in *Sofie*. And the insurance bad faith claim is as firmly rooted in the common law of tort as were the Sofies' personal injury claims. *See Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 389, 823 P.2d 499 (1992) ("An action for bad faith handling of an insurance claim sounds in tort."); *cf. Burnham v. Commercial Cas. Ins. Co. of Newark*, 10 Wn.2d 624, 627, 117 P.2d 644 (1941) (holding that harm is an element of an action for insurer's negligent

handling of the defense of a claim (citing *Sterios v. S. Sur. Co.*, 122 Wash. 36, 209 P. 1107 (1922) (upholding a jury verdict in a claim that the insurer negligently failed to defend its insured))). There is no more justification to deny Farmers its constitutional right to have a jury determine damages than there was to deny the Sofies that right.

¶64 The majority argues that a judge's reasonableness determination "measures the harm suffered by the insured and eliminates any need for a factual determination of damages in the later bad faith claim." Majority at 772 n.1. Dissecting this argument, the majority reasons: a judge determines "harm" in equity, the equitable determination becomes the measure of damages, and the parties are no longer entitled to a jury trial on damages. Consider the ramifications of this breathtaking argument. The legislature could simply provide for an equitable proceeding in which the sole issue would be the amount of damages suffered by a party, and which would collaterally estop the parties from seeking a jury trial on damages. This would be no different from the majority's decision that a judge's reasonableness determination under a statute promulgated by the legislature deprives the parties of the right to jury trial.[6]

¶65 The right to jury trial cannot be truncated by such a procedural pretext. The jury trial is the rootstock of our liberties, a fundamental right for which the peers of England stood firm at Runnymede against King John, without which the original states refused to ratify the constitution until the bill of rights was added, and which article I, section 21 requires must remain "inviolate."

¶66 The majority's reasoning is also contrary to *Sofie*, in which we distinguished the unconstitutional cap on noneco-

---

[6] Actually, this case is worse than the hypothetical statute described in the text because here, it was this court that decided to apply the reasonableness determination to a bad faith action and now deprives Farmers of a jury trial. I decline to join this violation of article I, section 21, deferring to the constitutional requirement to preserve the right to a jury trial "inviolate."

nomic damages from the mandatory arbitration procedure, which requires that damages in smaller cases must be determined initially by an arbitrator. We noted that "the availability of a jury trial de novo to redetermine the arbitrator's conclusions preserved the right protected by article 1, section 21." *Sofie*, 112 Wn.2d at 652. If the majority's interpretation were correct, the constitution would not require a trial de novo by jury; the arbitrator's conclusion would authoritatively determine the damages.

¶67 The majority seeks to avoid the application of *Sofie* by relying on our holding in *Nielson v. Spanaway General Medical Clinic, Inc.*, 135 Wn.2d 255, 956 P.2d 312 (1998). *See* majority at 771-72. This reliance is misplaced. In *Nielson*, we held that the trial court's application of collateral estoppel to the issue of damages did not violate the Nielsons' right to a jury trial. 135 Wn.2d at 268-69. The Nielsons brought two separate medical malpractice actions: one against the United States, as owner and operator of Madigan Hospital, in federal court and the other against a private clinic and physician in state court. *Id.* at 259. The federal case was tried first—without a jury, as required by 28 U.S.C. § 2402—and the federal court found total damages of just over $3 million. *Id.* at 259-60. We held that the Nielsons were collaterally estopped from relitigating the issue of damages. *Id.* at 268-69. The application of collateral estoppel to the issue of damages did not violate article I, section 21 because there was no factual issue remaining on the subject of damages for a jury to determine. *Id.* at 269.

¶68 *Nielson* does not control this case because the Nielsons chose to litigate their claim in federal court, in which they had no right to a jury trial, and were collaterally estopped by the federal court decision. Here, by contrast, Farmers had no choice but to intervene in the reasonableness determination in order to protect itself, and most importantly, demanded a jury trial, which the trial court denied. Clerk's Papers at 107-23, 384-95. *Nielson* is the result of the anomaly that the federal constitution does not allow a jury trial in the

very same circumstances in which the Washington Constitution requires a jury trial. Once the federal court decided the Nielsons' damages, no issue of damages remained for a Washington jury to determine. As we held in *Nielson*, "[a]lthough the factual issue of damages is a jury question in Washington, there must be an issue of fact to resolve in order for that right to arise." 135 Wn.2d at 269.

¶69 To state the matter another way, the Nielsons had no right to a jury trial in the initial proceeding—the federal trial—and were bound by the result in the subsequent Washington state court action. But Farmers has the right to a jury trial on damages under state law and is not precluded by a federal determination of the identical issue. *Nielson* is inapposite.

¶70 For the foregoing reasons, I would hold that the judicially created application of the reasonableness hearing to decide the reasonableness of a covenant judgment violates the right to jury determination of damages, a right that article I, section 21 dictates "shall remain inviolate."

¶71 I respectfully dissent.

MADSEN, C.J., and J.M. JOHNSON, J., concur with WIGGINS, J.

After modicication, further reconsideration denied January 10, 2013.